STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel CHRISTENSEN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–969–CR. Argued February 10, 1981.
—Decided March 3, 1981.*

(Also reported in 302 N.W.2d 448.)

---

For the petitioner there were briefs and oral argument by *Jack E. Schairer*, senior assistant public defender.

For the respondent the cause was argued by *Andrew L. Somers, Jr.*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed April 3, 1980, affirming the judgment of conviction entered by the circuit court for Vilas county, Timothy L. Vocke, Circuit Judge. Daniel Christensen, the defendant, was convicted of knowingly resisting a constable while such officer was doing an act in his official capacity and with lawful authority, in violation of sec. 946.41(1), Stats. We affirm the decision of the court of appeals which affirmed the conviction of defendant.

The charge arose from an incident which occurred at about 7 p.m. on February 15, 1979. Although there was conflicting testimony, the following facts can be gleaned from the record. Robert Larson, a retired heavy equipment mechanic elected to the position of constable of the Town of Winchester,[1] Vilas County, Wisconsin, heard a police radio call asking the deputy sheriffs of Vilas County to respond to a "disturbance" or "incident" at the Turtle Lodge Bar in the Town of Winchester. Larson, using his truck radio, advised the Vilas County Sheriff's Department that he would respond to the call. Larson drove to the bar in his pick-up truck, a personal vehicle equipped with a snow plow, police radio, a regu-

---

[1] Sec. 60.19, Stats., provides for the election of town officers including a constable.

lation police light bar with red light, siren and speaker system in it, and an 18″ by 24″ sign on each side of the truck reading "Winchester Police."

Upon arriving at the Turtle Lodge Bar parking lot Larson saw a pick-up truck across the road in a ditch, stuck in the snowbank. Larson pulled into the parking lot, blocked the exit by dropping the snow plow blade and got out of his truck. Larson was dressed in blue levis, a flannel shirt, a blue down jacket and Sorrel boots. He wore a gunbelt, with revolver, mace, and handcuffs attached to the belt and he held a riot baton in his hand. He saw several people he knew standing in the parking lot area. The owner of the truck lodged in the snowbank asked Larson whether Larson was going to give him a ticket. Larson said "no, I just want to know what's going on here." The defendant approached Larson and asked Larson what he was going to do with the "stick." Larson testified that he told the defendant he was "an officer from Winchester [and] I want to know what's going on." Larson did not receive any indication from the defendant that he understood Larson was an officer. The defendant testified that the defendant knew Larson to be a constable and that the defendant was familiar with Larson's vehicle. The defendant and at least one defense witness testified that they did not hear Larson identify himself as an officer. In any event, after this verbal exchange between Larson and the defendant, the defendant grabbed the baton and kicked Larson in the groin. Larson countered by knocking the defendant on the head with the baton. The defendant went to his knees, and Larson told him he was under arrest. Larson, aided by people in the parking lot, then subdued and arrested the defendant after a struggle.

On a trial to the court the defendant was convicted of knowingly resisting an officer in violation of sec. 946.-41(1), Stats., which provides as follows:

"Whoever knowingly resists or obstructs an *officer* while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor." (Emphasis added.)

A principal issue presented to the trial court, to the court of appeals and then to this court, in both the petition to review and in the briefs, is whether a constable is an officer as that term is used in sec. 946.41(1). Sec. 946.41(2)(a), Stats., defines "officer" as a "peace officer or other public officer or public employee having the authority by virtue of his office or employment to take another into custody."[2] Sec. 939.22(22) defines "peace officer" for purposes of ch. 946, Stats., as "any person vested by law with a duty to maintain public order or to make arrests for crime, whether that duty extends to all crimes or is limited to specific crimes." Consequently, the answer to the question of whether the constable is an officer under sec. 946.41(2)(a) depends on the constable's arrest powers, that is, whether a constable "is vested by law with a duty . . . to make arrests . . . for all crimes or . . . specific crimes" (secs. 939.22(22), 946.41(2)(a)) or has "the authority by virtue of his office or employment to take another into custody." (Secs. 939.22(30), 946.41(2)(a).) We conclude that a constable is an "officer" under sec. 946.41(2). The constable falls into the category of peace officer because the constable is vested by law with a duty to make arrests "for specific crimes," *see, e.g.,* sec. 175.05(3),

---

[2] Sec. 939.22(30), Stats., defines public officer and public employee as follows:

" 'Public officer'; 'public employe'. A 'public officer' is any person appointed or elected according to law to discharge a public duty for the state or one of its subordinate governmental units. A 'public employe' is any person, not an officer, who performs any official function on behalf of the state or one of its subordinate governmental units and who is paid from the public treasury of the state or subordinate governmental unit."

Stats.,[3] or falls into the category of a public officer because the constable has "the authority by virtue of his office or employment to take another into custody," *see, e.g.,* sec. 176.63.[4]

That a constable falls within the definition of officer in sec. 946.41(1), Stats., does not end the controversy between the defendant and the state. The defendant and the state dispute whether Larson was acting in an official capacity when the defendant knowingly resisted him. The resolution of this issue turns on determining what "act" Larson was "doing" when the defendant

[3] Sec. 175.05(3), Stats.: "QUESTIONING AND DETAINING SUSPECTED PERSONS. Any peace officer or any person employed as watchman, guard, or in a supervisory capacity on premises posted as provided in sub. (2) may stop any person found on any premises to which entry without permission is forbidden by said subsection and may detain and demand of him his name, address and business in such place. If such peace officer or employe has reason to believe from the answers of the person so interrogated that such person has no right to be in such place, *such peace officer* or employe *shall* forthwith release or *arrest such person without a warrant on a charge of violating the provisions of sub. (2)* and such employe in case of arrest shall forthwith turn him over to a peace officer." (Emphasis added.)

Sec. 175.05(1)(e), Stats., defines the term "peace officer" for purposes of sec. 175.05, Stats., as including "sheriffs, undersheriffs, deputy sheriffs, police officers, policemen appointed pursuant to the provision of s. 192.47, *constables,* marshals, deputy marshals, and federal law enforcement officers." (Emphasis added.)

[4] Sec. 176.63, Stats.: "**Arrest without warrant.** Any *peace officer may arrest without warrant* any person, committing in his presence violations of any provisions of this chapter, chapter 66, or chapter 139, and may without a search warrant seize any personal property used in connection with such violation."

Sec. 176.01(3), Stats., defines the term "peace officer" for purposes of ch. 176, Stats., as "including sheriffs, undersheriffs, deputy sheriffs, police officers, *constables,* marshals, and deputy marshals, and any duly authorized employe of the department of justice and the department of revenue to act as such under s. 66.054 and chs. 139 and 176." (Emphasis added.)

knowingly resisted him and whether Larson was acting in his official capacity.[5]

The state asserts that Larson was investigating a disturbance within the town for which he serves as constable when the defendant knowingly resisted him. In reviewing the facts, the trial court concluded that Larson gave the defendant "an order to approach and talk to and give information to the officer, [that a constable] has a right to have an individual identify himself and state his business, . . . [and that] from that point on [after Larson asked to talk with the defendant] it appears to the court that for whatever reason the fight was on. There was struggle or resisting or however it's characterized." (Transcript pp. 145, 146)

Neither party cited any statute specifically empowering a constable to investigate or gather information about a disturbance or incident. We find no such statute. Relying on the absence of such a statute, the defendant argues that Larson's acts in his "official capacity" were limited to his being present in the parking lot and that Larson was not acting as an officer in his official capacity when he attempted to ask questions or to conduct

---

[5] This court has not explicitly adopted a particular test to determine whether a peace officer is acting in his official capacity as that term is used in sec. 946.41(1), Stats. However this court in State v. Barrett, 96 Wis.2d 174, 179–180, 291 N.W.2d 498 (1980), adopted the following test for "official capacity" as that phrase was used in sec. 940.205, Stats. 1975, relating to battery to a peace officer:

" 'Engaged in . . . performance of official duties' is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful."

We adopt the same test for sec. 946.41(1), Stats. For a discussion of the phrase "lawful authority" used in sec. 946.41, Stats., see State v. Barrett, supra, 96 Wis.2d at 181.

a minimal investigation of the alleged disturbance. The defendant contends that Larson was not acting in an official capacity because he was not performing a duty conferred upon him as constable when he questioned the defendant. The defendant contends that Larson had no greater authority or power to investigate the disturbance than an individual citizen. We disagree with this position. Sec. 60.54(6), Stats., provides that "the constable shall . . . cause to be prosecuted all violations of law of which he has knowledge or information." Although sec. 60.54(6) is not free from ambiguity, we conclude that sec. 60.54(6) authorized Larson, who was responding to the call of the office of the Vilas County Sheriff that there was a disturbance, to question persons at the scene of the alleged disturbance within the Town of Winchester for which he serves as constable. We therefore conclude that Larson was acting in his official capacity when questioning persons in the parking lot.

A search using the Legislative Reference Bureau computer revealed that more than 80 sections of the statutes refer to constables. Several persons are given the powers of the constable. *See, e.g.,* secs. 61.28, 62.09(13), Stats. The duties and powers of the constable as set forth in the statutes are unclear and ill-defined, particularly as to the constable's power or duty to arrest. Adding to the confusion is the frequent use in the statutes of the terms "peace officer" and "law enforcement officer." These terms do not have the same meaning throughout the statutes. Although in some statutory provisions the constable is specifically included within the definition of peace officer or law enforcement officer, often the statute is unclear as to whether the constable is such an officer and whether the constable has the powers and duties, including the power and duty to arrest, conferred and imposed by statute upon that peace officer or law enforcement officer. We suggest that the legislature

consider clarifying the powers and duties of the constable, particularly as to arrest.

Lastly defendant argues that the evidence was insufficient to sustain the conviction. He buttresses his argument with the claim that he was intoxicated. The defense of intoxication was not presented to the trial court and we decline to consider it. Reviewing the record to determine whether the evidence adduced, believed and rationally considered was sufficient to prove defendant's guilt beyond a reasonable doubt, *Lock v. State*, 31 Wis.2d 110, 142 N.W.2d 183 (1966), we conclude the evidence is sufficient to support the defendant's conviction under sec. 946.41(1), Stats., of knowingly resisting an officer while such officer is doing an act in an official capacity and with lawful authority.

*By the Court.*—The decision of the court of appeals is affirmed.

BEILFUSS, C. J., took no part.