MICHAEL J. GABLEMAN, J.
 

 ¶ 1 This is a review of an unpublished decision of the court of appeals, which affirmed the Milwaukee County Circuit Court's
 
 [1]
 
 judgment of conviction against Brian Grandberry.
 
 State v. Grandberry
 
 , No. 2016AP173-CR, unpublished slip op., ¶ 9,
 
 2016 WL 6953728
 
 (Wis. Ct. App. Nov. 29, 2016).
 

 ¶ 2 Grandberry was convicted of carrying a concealed and dangerous weapon contrary to
 
 Wis. Stat. § 941.23
 
 (2) (2013-14)
 
 [2]
 
 (the "Concealed Carry Statute"), resulting from an incident in which police discovered a handgun in the glove compartment of his motor vehicle during a traffic stop. Grandberry appealed his conviction, arguing that his conduct was in compliance with
 
 Wis. Stat. § 167.31
 
 (2)(b), which regulates the transportation of firearms in motor vehicles (the "Safe Transport Statute"),
 
 [3]
 
 and that his compliance with the Safe Transport Statute precluded his conviction under the Concealed Carry Statute. The court of appeals affirmed, holding that compliance with the Safe Transport Statute does not preclude conviction for a violation of the Concealed Carry Statute.
 

 ¶ 3 Grandberry raises two issues. First, he argues that there is insufficient evidence to support his conviction. He reaches this conclusion by asserting that a conflict exists between the two statutes that can be resolved only by holding that persons in compliance with the Safe Transport Statute do not violate the first element of the crime of carrying a concealed and dangerous weapon contrary to the Concealed Carry Statute. We hold that the Concealed Carry Statute and Safe Transport Statute are not in conflict because Grandberry could have complied with both by either
 obtaining a license to carry a concealed weapon pursuant to
 
 Wis. Stat. § 175.60
 
 (hereinafter "concealed carry license" or "license") or by placing his loaded handgun out of reach.
 

 ¶ 4 Second, Grandberry argues that the Concealed Carry Statute is unconstitutionally vague because a person of ordinary intelligence would reasonably believe that complying with the Safe Transport Statute is sufficient to lawfully place a loaded, uncased handgun in the glove compartment of a motor vehicle. We hold that the Concealed Carry Statute is not unconstitutionally vague because a person of ordinary intelligence has sufficient notice that carrying a concealed and dangerous weapon is unlawful unless one of the enumerated exceptions in the Concealed Carry Statute applies.
 

 ¶ 5 Accordingly, we affirm.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 ¶ 6 Grandberry was charged with one count of carrying a concealed and dangerous weapon, contrary to
 
 Wis. Stat. § 941.23
 
 (2). The charge arose out of a traffic stop in the City of Milwaukee. At the bench trial held on the matter, Grandberry and the State stipulated to the truth of the facts in the criminal complaint. Accordingly,
 no testimony was taken. The complaint states, in relevant part:
 

 On November 9, 2014, [two] City of Milwaukee Police Officer[s] ... conducted a [traffic] stop of a vehicle ... driven by the defendant [on] N. 60th St. Upon stopping the vehicle, the defendant identified himself by name but stated he did not have his wallet [or] identification. [One officer] then asked the defendant if he had any firearms in the car[,] and the defendant stated he did[,]
 

 in the glove compartment. [The officer] then asked the defendant if he had a valid [concealed carry license] and the defendant stated he did, but did not have it with him. Officers then conducted a search of the [license] database and discovered that the defendant did not, in fact, have a valid [concealed carry license]. Officers then went to the glove compartment and discovered a loaded, Hi-Point, .45 [caliber], semi-automatic pistol.
 

 Upon arresting the defendant and conveying him to the station, the defendant made unprovoked statements to the effect of[:] "The gun in the glove compartment is mine, I took the [concealed carry license] class but never actually got a [license]." Additionally, the defendant is not a peace officer.
 

 Based upon these facts, the circuit court entered a judgment of conviction against Grandberry. Grandberry then appealed his conviction.
 

 ¶ 7 The court of appeals affirmed, holding that the Safe Transport Statute did not apply to Grandberry.
 
 [4]
 

 Grandberry
 
 , unpublished slip op., ¶ 9. The court of appeals then applied the stipulated facts to the
 elements of
 
 Wis. Stat. § 941.23
 
 (2), and held that the State proved all elements beyond a reasonable doubt.
 

 Id.
 

 , ¶ 11
 
 .
 

 ¶ 8 As to the second issue, the court of appeals held that the Concealed Carry Statute is not unconstitutionally vague because Grandberry had actual knowledge that he needed a concealed carry license to lawfully carry a concealed handgun in the glove compartment of his motor vehicle.
 
 Grandberry
 
 , unpublished slip op., ¶ 19.
 

 ¶ 9 Grandberry petitioned this court for review, which we granted on March 13, 2017.
 

 II. STANDARD OF REVIEW
 

 ¶ 10 Grandberry challenges the sufficiency of the State's evidence to support his conviction. "We ... independently review whether the evidence was sufficient to sustain a jury verdict, but in so doing, we view the evidence most favorably to sustaining the conviction."
 
 State v. Hanson
 
 ,
 
 2012 WI 4
 
 , ¶ 15,
 
 338 Wis. 2d 243
 
 ,
 
 808 N.W.2d 390
 
 .
 

 ¶ 11 The proper interpretation of
 
 Wis. Stat. §§ 167.31
 
 (2)(b) and 941.23(2) is foundational to Grandberry's sufficiency-of-the-evidence
 challenge; we review issues of statutory interpretation de novo.
 

 Id.
 

 , ¶ 15
 
 . "In construing or interpreting a statute the court is not at liberty to disregard the plain, clear words of the statute."
 
 State ex rel. Kalal v. Circuit Court for Dane Cty.
 
 ,
 
 2004 WI 58
 
 , ¶ 46,
 
 271 Wis. 2d 633
 
 ,
 
 681 N.W.2d 110
 
 (citations omitted). We assume that legislative intent is expressed in the statutory language.
 
 Id.
 
 , ¶ 43. We interpret statutory language in context, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results. Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."
 
 Id.
 
 , ¶ 46 (citations omitted).
 

 ¶ 12 This case also requires us to determine whether
 
 Wis. Stat. § 941.23
 
 (2) is unconstitutionally vague. The constitutional validity of a statute presents a question of law that this court reviews de novo.
 
 State v. Pittman
 
 ,
 
 174 Wis. 2d 255
 
 , 276,
 
 496 N.W.2d 74
 
 (1993). "It falls to the party challenging the constitutionality of a statute to prove that the statute is unconstitutional beyond a reasonable doubt."
 
 State v. Cole
 
 ,
 
 2003 WI 112
 
 , ¶ 11,
 
 264 Wis. 2d 520
 
 ,
 
 665 N.W.2d 328
 
 . The court indulges "every presumption to sustain the law ... and if any doubt exists about a statute's constitutionality ... [the court] must resolve that doubt in favor of constitutionality."
 

 Id.
 

 III. ANALYSIS
 

 ¶ 13 We begin our analysis by first setting out the relevant portions of both the Concealed Carry and Safe Transport Statutes. We then address Grandberry's argument that a person in compliance with the Safe Transport Statute cannot, as a matter of law, violate the first element of the Concealed Carry Statute, which he frames as a sufficiency-of-the-evidence challenge. Finally, we address Grandberry's argument that the Concealed Carry Statute is unconstitutionally vague.
 

 A. Statutory Background
 

 1. The Concealed Carry Statute
 

 ¶ 14 The Concealed Carry Statute, with certain exceptions, criminalizes the carrying of concealed and dangerous weapons. The Concealed Carry Statute states, in relevant part:
 

 (2) Any person, other than one of the following, who carries a concealed and dangerous weapon is guilty of a class A misdemeanor:
 

 (a) A peace officer ...
 

 (b) A qualified out-of-state law enforcement officer ...
 

 (c) A former officer ...
 

 (d) A licensee, as defined in s. 175.60(1)(d)
 
 [
 

 5
 

 ]
 
 ...
 

 (e) An individual who carries a concealed and dangerous weapon, as defined in s. 175.60(1)(j),
 
 [
 

 6
 

 ]
 
 in his or her own dwelling or place of business ...
 

 Wis. Stat. § 941.23
 
 (2).
 

 ¶ 15 We read the Concealed Carry Statute as having two parts. First, we refer to the part that creates the crime of carrying a concealed and dangerous weapon as the "general prohibition:" "Any person ... who carries a concealed and dangerous weapon
 
 [
 

 7
 

 ]
 
 is
 guilty of a Class A misdemeanor."
 
 id="p219" href="#p219" data-label="219" data-citation-index="1" class="page-label">*219
 

 See
 

 id.
 
 In order to convict a defendant of carrying a concealed and dangerous weapon contrary to
 
 Wis. Stat. § 941.23
 
 (2), the State must prove three elements:
 

 1. The defendant carried a dangerous weapon. "Carried" means went armed with.
 

 2. The defendant was aware of the presence of the weapon.
 

 3. The weapon was concealed.
 

 Wis JI-Criminal 1335 (2016).
 

 ¶ 16 Almost 90 years ago, we first used the term "within reach" to describe when a person "goes armed" with a concealed and dangerous weapon for purposes of the Concealed Carry Statute.
 
 Mularkey v. State
 
 ,
 
 201 Wis. 429
 
 , 432,
 
 230 N.W. 76
 
 (1930) ("[T]he driver of an automobile goes armed, within the meaning of [the Concealed Carry Statute], when he has a dangerous weapon within reach on a shelf in back of his seat."). Nearly 50 years later, the definition was subsequently clarified so that " 'going armed' [with a concealed and dangerous weapon] meant that the weapon was on the defendant's person or that the weapon [was] within the defendant's reach...."
 
 State v. Asfoor
 
 ,
 
 75 Wis. 2d 411
 
 , 433-34,
 
 249 N.W.2d 529
 
 (1977). We articulated the current definition of "went armed with" in
 
 State v. Fry
 
 ,
 
 131 Wis. 2d 153
 
 , 182,
 
 388 N.W.2d 565
 
 (1986) (emphasis added) ("The elements of the crime of carrying a concealed weapon are: (1) the defendant had a dangerous weapon on his person
 
 or within his reach
 
 ...."),
 
 overruled on other grounds by
 

 State v. Dearborn
 
 ,
 
 2010 WI 84
 
 ,
 
 327 Wis. 2d 252
 
 ,
 
 786 N.W.2d 97
 
 .
 

 ¶ 17 The statute's second part sets forth enumerated exceptions to the general prohibition.
 
 Wis. Stat. § 941.23
 
 (2)(a)-(e). These exceptions are affirmative defenses to a charge of unlawfully carrying a concealed and dangerous weapon.
 
 State v. Williamson
 
 ,
 
 58 Wis. 2d 514
 
 , 524,
 
 206 N.W.2d 613
 
 (1973) (holding that defendants must raise their status as a peace officer as an affirmative defense). The enumerated exceptions were expanded in 2011. 2011 Wis. Act. 35, §§ 50-56. Before the 2011 amendment, only peace officers could lawfully carry a concealed and dangerous weapon.
 
 Wis. Stat. § 941.23
 
 (2) (2009-10).
 

 2. The Safe Transport Statute
 

 ¶ 18 The Safe Transport Statute states in relevant part:
 

 (b) [N]o person may place, possess, or transport a firearm
 
 [
 

 8
 

 ]
 
 ... in or on a vehicle, unless one of the following applies:
 

 1. The firearm is unloaded or is a handgun.
 
 [
 

 9
 

 ]
 

 Wis. Stat. § 167.31
 
 (2)(b)1.
 
 [10]
 
 This statute was amended in the same act that created Wisconsin's concealed carry license regime. 2011 Wis. Act. 35, § 31. Prior to the 2011 amendment, the Safe Transport Statute
 required all firearms (including handguns) that were placed within a motor vehicle to be unloaded and encased.
 
 Wis. Stat. § 167.31
 
 (2)(b) (2009-10). The current version of the statute does not include a requirement that any firearm be encased. § 167.31(2)(b). Further, though the statute generally requires firearms be unloaded, it expressly excepts handguns from this requirement. § 167.31(2)(b)1. Therefore, under the terms of the Safe Transport Statute, handguns in a motor vehicle may be both loaded and uncased.
 
 [11]
 

 Id.
 

 B. Grandberry's Conviction is Supported by Sufficient Evidence.
 

 1. The nature of Grandberry's argument
 

 ¶ 19 Grandberry frames his first issue as a sufficiency-of-the-evidence challenge; however, Grandberry does not raise the challenge in the traditional sense such that he asks us to review the evidence and apply it to the elements of the Concealed Carry Statute in order to determine whether there is "sufficient evidence" to support his conviction.
 
 See
 

 State v. Smith
 
 ,
 
 2012 WI 91
 
 , ¶ 41,
 
 342 Wis. 2d 710
 
 ,
 
 817 N.W.2d 410
 
 . Rather, Grandberry uses his sufficiency of the evidence
 argument as the means by which he argues that the relevant statutes are in conflict.
 

 ¶ 20 Grandberry's argument consists of three components: two premises and a conclusion. His first premise is that the two statutes are in conflict because the same conduct-placing a loaded handgun in a motor vehicle-can comply with the Safe Transport Statute yet violate the Concealed Carry Statute. His second premise is that this purported conflict between the statutes must be resolved by a holding from this court that a person in compliance with the Safe Transport Statute does not "carry" for purposes of the Concealed Carry Statute.
 
 [12]
 
 Grandberry's conclusion is that he complied with the Safe Transport Statute, and
 so, as a matter of law, his conduct could not violate the first element ("carry") of the offense of carrying a concealed and dangerous weapon contrary to the Concealed Carry Statute.
 

 2. The Safe Transport Statute and Concealed Carry Statute are not in conflict.
 

 ¶ 21 Grandberry's first premise is false because the two statutes are not in conflict. In order for two statutes to be in conflict, it must be impossible to comply
 with both.
 
 See
 

 City News & Novelty, Inc. v. Waukesha
 
 ,
 
 170 Wis. 2d 14
 
 , 22,
 
 487 N.W.2d 316
 
 (Ct. App. 1992). The two statutes serve distinct purposes: the Safe Transport Statute regulates the transportation of firearms in motor vehicles to ensure the transportation is done safely,
 
 see
 

 Wis. Stat. § 167.31
 
 (entitled "Safe use and transportation of firearms and bows."),
 
 [13]
 
 while the Concealed Carry Statute regulates the carrying of concealed firearms to ensure the safety of the public,
 
 see
 

 State v. Walls
 
 ,
 
 190 Wis. 2d 65
 
 , 71,
 
 526 N.W.2d 765
 
 (Ct. App. 1994) (quoting
 
 Williams v. Commonwealth
 
 ,
 
 261 S.W.2d 807
 
 , 807-808 (Ky. 1953) (governments historically prohibited the carrying of concealed weapons "because persons becoming suddenly angered and having such a weapon in their pocket[ ] would be likely to use it, which in their sober moments they would not have done, and which could not have been done had not the weapon been upon their person.") ). When a person places a loaded handgun in a motor vehicle, he can both transport a firearm
 in that motor vehicle (an act governed by the terms of the Safe Transport Statute) and carry a concealed and dangerous weapon (an act governed by the Concealed Carry Statute). Contrary to Grandberry's assertions, compliance with both statutes is not only possible, it is required.
 

 ¶ 22 Grandberry argues that it is impossible to comply with the Safe Transport Statute without violating the Concealed Carry Statute. Grandberry asserts that "Wisconsin courts have ... generally considered firearms located anywhere inside the interior portion of a vehicle to be within a defendant's reach and thus 'carried' for purposes of the [Concealed Carry Statute]." According to Grandberry, a person who transports a loaded handgun in a motor vehicle that lacks a trunk separate from the passenger area (e.g., a minivan, SUV, hatchback, or station wagon) complies with the Safe Transport Statute yet is always in violation of the Concealed Carry Statute. This is so, he says, because the loaded handgun would always, as a matter of law, be "within reach," and thus "carried" for purposes of the Concealed Carry Statute.
 

 ¶ 23 This would be a compelling argument if it were true. As it is, however, his assertion is wholly unsupported by any statute, case law, or regulation.
 
 [14]
 

 ¶ 24 Grandberry, perhaps recognizing that no Wisconsin court has ever defined "within reach" as broadly as he
 does, seeks to bolster his reading of the statute by drawing an analogy to search incident to arrest law under the Fourth Amendment. The Fourth Amendment permits warrantless searches "within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].' "
 
 New York v. Belton
 
 ,
 
 453 U.S. 454
 
 , 460,
 
 101 S.Ct. 2860
 
 ,
 
 69 L.Ed.2d 768
 
 (1981) (quoting
 
 Chimel v. California
 
 ,
 
 395 U.S. 752
 
 , 763,
 
 89 S.Ct. 2034
 
 ,
 
 23 L.Ed.2d 685
 
 (1969) ) (alteration in original). Grandberry construes the Court's words in
 
 Belton
 
 to mean "within reach." We are not so convinced. Rather, federal courts have described the area subject to a warrantless search incident to arrest as the arrestee's "grab area."
 
 See, e.g.
 
 ,
 
 United States v. Gandia
 
 ,
 
 424 F.3d 255
 
 , 261 (2d Cir. 2005).
 
 [15]
 
 After equating the grab area of Fourth Amendment jurisprudence to "within reach" for purposes of the Concealed Carry Statute, Grandberry goes on to argue that the terms have the same meaning
 regardless of the context in which they are applied.
 
 [16]
 
 They do not.
 

 ¶ 25 Grandberry and the concurrence fail to recognize the important distinctions between these terms. Both Grandberry and the concurrence conflate judicial interpretations of the Fourth Amendment with a factfinder's application of laws to a given set of facts. The determination of whether police conduct comports with Fourth Amendment jurisprudence concerning searches incident to arrest is a question of
 
 law
 
 .
 
 State v. Harris
 
 ,
 
 206 Wis. 2d 243
 
 , 249-50,
 
 557 N.W.2d 245
 
 (1996). On the other hand, the question of whether a handgun is within reach is one of
 
 fact
 
 .
 
 [17]
 

 See
 

 McNair v. Coffey
 
 ,
 
 279 F.3d 463
 
 , 476 (7th Cir. 2002) (Coffey, J., concurring in the judgment and dissenting in part) ("It is a basic premise of our legal system that juries are the triers of fact only; it is for the judge, not the jury to interpret the law and to draw the line in the sand separating conduct that is protected and unprotected under the constitution.").
 

 ¶ 26 Accordingly, it would be improper for us to set forth an exhaustive list of nooks and crannies within the various and sundry configurations of motor vehicles wherein the armed, but unlicensed motorist may place his dangerous weapon. Our inability is a matter of legal proscription and not lack of will. Put simply, we do not provide the certainty both Grandberry and the concurrence seek because our system of criminal justice assigns the task of defining statutory terms to this court (as we did when we defined "go armed with" to mean "within reach"), but assigns the
 task of determining whether a set of facts fits that definition (in this case, whether a dangerous weapon is "within reach") to the jury.
 
 State v. Leist
 
 ,
 
 141 Wis. 2d 34
 
 , 37-38 & n.2,
 
 414 N.W.2d 45
 
 (Ct. App. 1987) (citing
 
 United States v. Goetz
 
 ,
 
 746 F.2d 705
 
 , 708 (11th Cir. 1984) and
 
 State v. Christensen
 
 ,
 
 100 Wis. 2d 507
 
 , 510,
 
 302 N.W.2d 448
 
 (1981) );
 
 cf.
 

 Curtis v. Montgomery
 
 ,
 
 552 F.3d 578
 
 , 581-82 (7th Cir. 2009) (quoting
 
 People v. Curtis
 
 ,
 
 354 Ill.App.3d 312
 
 ,
 
 290 Ill.Dec. 49
 
 ,
 
 820 N.E.2d 1116
 
 , 1124 (2005) ) ("[W]hether a particular set of circumstances constitutes 'surveillance' as defined in the statute is a question of fact for the jury.").
 

 ¶ 27 Next, Grandberry and the concurrence fail to recognize that the two bodies of law developed independently. As discussed above, we first used the term "within reach" to define "go armed with" in 1930.
 
 Mularkey
 
 ,
 
 201 Wis. at 432
 
 ,
 
 230 N.W. 76
 
 ;
 
 see also
 

 supra
 
 , ¶ 16. The concept of search incident to arrest originated in 1914.
 
 Chimel
 
 ,
 
 395 U.S. at 755
 
 ,
 
 89 S.Ct. 2034
 
 (citing
 
 Weeks v. United States
 
 ,
 
 232 U.S. 383
 
 ,
 
 34 S.Ct. 341
 
 ,
 
 58 L.Ed. 652
 
 (1914) ). However, no phrase that resembles "within reach" or "grab area" was used in the search incident to arrest context before 1969.
 
 Id.
 
 at 763,
 
 89 S.Ct. 2034
 
 ("There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate
 control'-construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.");
 
 see also
 

 id.
 

 at 755-762
 
 ,
 
 89 S.Ct. 2034
 
 (recounting development of search incident to arrest jurisprudence).
 

 ¶ 28 This independent development of the two distinct legal concepts is significant because we have never conflated the concepts of grab area and within reach when construing the Concealed Carry Statute. One example of this separateness is
 
 Fry
 
 . Most of our decision in that case centers on our consideration of Fourth Amendment jurisprudence concerning searches incident to arrest.
 
 See generally
 

 Fry
 
 ,
 
 131 Wis. 2d at 161-81
 
 ,
 
 388 N.W.2d 565
 
 . However, in a discreet part of the opinion, we separately considered whether the evidence adduced at trial was sufficient to uphold the defendant's conviction for carrying a concealed and dangerous weapon. The defendant argued that the handgun in his glove compartment could not, as a matter of law, be within reach because he testified at trial that his glove compartment would not open when the passenger seat was occupied.
 

 Id.
 

 at 182
 
 ,
 
 388 N.W.2d 565
 
 . We rejected his argument because
 
 the jury
 
 "was free to discount" his testimony in resolving the
 
 factual
 
 issue of whether his handgun was within reach.
 

 Id.
 

 (quoted source omitted).
 

 ¶ 29 In
 
 Fry
 
 , we properly treated the concepts of "grab area" and "within reach" as entirely separate concepts, as we have for decades and as we do here.
 

 Id.
 

 The two areas of law developed separately, and it is only by coincidence that they employ similar language. Confusion between the two contexts exists only because Grandberry threw it out like so much chum upon the waters and the concurrence took the bait hook, line, and sinker. To define "within reach" in the same
 way the United States Supreme Court defines "grab area" is to: (1) assign a definition to "within reach" that was not and could not have been intended when the term was first used;
 
 [18]
 
 (2) confuse two entirely separate and distinct
 areas of the law; and (3) lead naturally to the illegal usurpation of the role of the jury. We decline Grandberry's invitation to do so, no matter how vociferously the concurrence urges us to accept it.
 

 3. Grandberry's argument fails because there is no conflict between the statutes.
 

 ¶ 30 We start by observing that no part of a motor vehicle is, as a matter of law, within reach. Rather, defining what areas of a motor vehicle are within reach has been, is now, and (absent legislative amendment) will continue to be a question to be resolved on a case-by-case basis by finders of fact and by courts reviewing the sufficiency of the evidence in particular cases.
 
 See generally
 

 Fry
 
 ,
 
 131 Wis. 2d at 182
 
 ,
 
 388 N.W.2d 565
 
 . Citizens who seek to comply with both statutes have at least two reasonable means of doing so: (1) obtaining a concealed carry license;
 
 [19]
 
 or, (2) placing their firearms out of reach.
 

 ¶ 31 Grandberry and the amicus devote a considerable portion of their respective arguments within their briefs describing the parade of horribles they claim will result from our decision to affirm the court of appeals. They raise the specter of promiscuous prosecution of hunters and sport shooters who will be left struggling to comply with both statutes. The myriad of hypothetical circumstances that may arise in factual backgrounds in prosecutions for carrying a concealed and dangerous weapon render it impossible for this court to establish a bright-line rule setting forth which parts of a vehicle are and are not within reach. Nor is it, absent legislative directive, our place to do so.
 
 See
 

 Kittitas Cty. v. E. Wash. Growth Mgmt. Hearings Bd.
 
 ,
 
 172 Wash.2d 144
 
 ,
 
 256 P.3d 1193
 
 , ¶ 23 (2011) (rejecting proposed bright-line rule where inquiry is "a question of fact based on the specific circumstances of each case"). Nonetheless, citizens and factfinders can find guidance
 
 [20]
 
 in our precedent and common sense, and should
 consider factors such as the location of the dangerous weapon in the motor vehicle relative to the location of its possessor, the motor vehicle's size, and the possessor's ability to reach the dangerous weapon while in the motor vehicle.
 

 C. Grandberry Failed to Satisfy His Burden to Prove the Concealed Carry Statute is Unconstitutionally Vague.
 

 ¶ 32 We next consider whether the Concealed Carry Statute is unconstitutionally vague
 
 [21]
 
 as applied to Grandberry. He admits
 that "[v]iewed separately, the [Concealed Carry Statute] and the [Safe Transport Statute] appear clear." However, he argues that "read together, they create unconstitutional vagueness." This argument is based on the same premise as his sufficiency-of-the-evidence argument-that the two statutes are in conflict-and for the same reasons we hold that the Concealed Carry Statute provides sufficient notice of what conduct is prohibited.
 

 ¶ 33 "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."
 
 Beckles v. United States
 
 , --- U.S. ----,
 
 137 S.Ct. 886
 
 , 892,
 
 197 L.Ed.2d 145
 
 (2017) (citing
 
 Kolender v. Lawson
 
 ,
 
 461 U.S. 352
 
 , 357,
 
 103 S.Ct. 1855
 
 ,
 
 75 L.Ed.2d 903
 
 (1983) ).
 
 See also
 

 State v. Cissell
 
 ,
 
 127 Wis. 2d 205
 
 , 224,
 
 378 N.W.2d 691
 
 (1985) (quoting
 
 Kolender
 
 for the
 definition of void-for-vagueness); Wayne R. LaFave,
 
 1 Substantive Criminal Law
 
 § 2.3 (2d ed.), Westlaw (database updated Oct. 2017) ("The void-for-vagueness doctrine ... require[s] that a criminal statute be declared void when it is so vague that men of common intelligence must necessarily guess at its meaning and differ to its application").
 

 ¶ 34 Grandberry's constitutional challenge is as-applied. In an as-applied challenge, a court assesses the merits of the constitutional claim by considering the facts of the particular case, not hypothetical facts in other situations.
 
 [22]
 

 State v. Hamdan
 
 ,
 
 2003 WI 113
 
 , ¶ 43,
 
 264 Wis. 2d 433
 
 ,
 
 665 N.W.2d 785
 
 . Thus, in this case, we consider whether a person of ordinary intelligence in Grandberry's situation (i.e., placing a loaded handgun in the glove compartment of a motor vehicle) would have fair notice that his conduct violates the Concealed Carry Statute.
 
 State v. Hahn
 
 ,
 
 221 Wis. 2d 670
 
 , 679,
 
 586 N.W.2d 5
 
 (Ct. App. 1998).
 

 ¶ 35 Grandberry's argument boils down to a complaint that the statutes overlap such that placing his loaded handgun in his glove compartment constitutes both transporting under the Safe Transport Statute and carrying under the Concealed Carry Statute, and thus his conduct can comply with one statute while simultaneously violating the other. Grandberry asks how a person reading the Safe Transport Statute can possibly know that complying with the terms of that statute may, in some circumstances, also violate
 the Concealed Carry Statute. Unlike the bulk of Grandberry's arguments, the answer to his question is straightforward and elegant in its simplicity: read the Concealed Carry Statute. Due process does not demand that every regulation on a certain subject be in the same statute; such a requirement would be absurd. Rather, where multiple statutes govern a defendant's conduct, due process requires that the terms of the statute under which the defendant was charged be sufficiently clear.
 
 Cissell
 
 ,
 
 127 Wis. 2d at 216-17
 
 ,
 
 378 N.W.2d 691
 
 (citing
 
 United States v. Batchelder
 
 ,
 
 442 U.S. 114
 
 , 123,
 
 99 S.Ct. 2198
 
 ,
 
 60 L.Ed.2d 755
 
 (1979) ).
 

 ¶ 36 The Concealed Carry Statute provides sufficient notice to a person of ordinary intelligence that carrying a concealed and dangerous weapon is prohibited
 unless one of the statutory exceptions enumerated in
 
 Wis. Stat. § 941.23
 
 (2)(a)-(e) applies.
 
 See
 

 Asfoor
 
 ,
 
 75 Wis. 2d at 435
 
 ,
 
 249 N.W.2d 529
 
 (holding prior version of the Concealed Carry Statute was not unconstitutionally vague). The statute clearly defines what conduct is prohibited: "Any person ... who carries a concealed and dangerous weapon is guilty of a Class A misdemeanor." § 941.23(2). The language creating the exceptions, "other than one of the following," is equally clear that the only way a person can lawfully carry a concealed and dangerous weapon is to fall within one of the enumerated exceptions.
 

 Id.
 

 Grandberry could not reasonably believe that placing a firearm in the glovebox of his motor vehicle is permitted under the terms of the Concealed Carry Statute
 
 [23]
 
 -something Grandberry
 obliquely acknowledged at the time of his arrest when he told the arresting officers (untruthfully) that he possessed a concealed carry license. Thus, Grandberry's due process challenge fails.
 

 IV. CONCLUSION
 

 ¶ 37 We hold that the Concealed Carry Statute and Safe Transport Statute are not in conflict because Grandberry could have complied with both by either obtaining a concealed carry license pursuant to
 
 Wis. Stat. § 175.60
 
 or by placing his loaded handgun out of reach. Further, we hold that the Concealed Carry Statute is not unconstitutionally vague because a person of ordinary intelligence has sufficient notice that carrying a concealed and dangerous weapon is unlawful unless one of the enumerated exceptions in the Concealed Carry Statute applies. For these reasons, we affirm the court of appeals.
 

 By the Court.
 
 -The decision of the court of appeals is affirmed.
 

 The Honorable Janet C. Protasiewicz presiding.
 

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.
 

 Although we have previously referred to
 
 Wis. Stat. § 167.31
 
 (2)(b) as the "vehicle statute,"
 
 Wisconsin Carry, Inc. v. City of Madison
 
 ,
 
 2017 WI 19
 
 , ¶ 12,
 
 373 Wis. 2d 543
 
 ,
 
 892 N.W.2d 233
 
 , we adopt the term used by the parties and court of appeals, "Safe Transport Statute," because it hews more closely to the actual text of the statute, which is entitled "Safe use and transportation of firearms and bows."
 

 The court of appeals concluded that the Safe Transport Statute "only applies [sic] to those who have passed the rigorous conditions for obtaining a [concealed carry license]" because the Safe Transport Statute borrows the definition of "Handgun" from
 
 Wis. Stat. § 175.60
 
 , which regulates concealed carry licenses.
 
 State v. Grandberry
 
 , No. 2016AP173-CR, unpublished slip op., ¶ 9,
 
 2016 WL 6953728
 
 (Wis. Ct. App. Nov. 29, 2016).
 

 We pause briefly to expressly note our disagreement with this analysis, as it lacks any support in the language of either of the relevant statutes. Furthermore, merely defining a term by reference to another statute does not expand or limit the scope of the original statute. The United States Court of Appeals for the D.C. Circuit aptly stated this concept when it said "[w]hen one statute ... incorporates a definition from another ... it imports only the specified definition and not the broader purpose of the statute from which it comes."
 
 Owens v. Republic of Sudan
 
 ,
 
 864 F.3d 751
 
 , 776 (D.C. Cir. 2017).
 

 "Licensee" is defined as "an individual holding a valid license to carry a concealed weapon."
 
 Wis. Stat. § 175.60
 
 (1)(d).
 

 "Weapon" is defined as "a handgun, an electric weapon, ... or a billy club."
 
 Wis. Stat. § 175.60
 
 (1)(j).
 

 For purposes of the general prohibition, a "dangerous weapon" includes "any firearm, whether loaded or unloaded."
 
 Wis. Stat. § 939.22
 
 (10). We note that, for purposes of the exception enumerated in
 
 Wis. Stat. § 941.23
 
 (2)(e), the legislature provided a narrower definition.
 
 See
 

 supra
 
 note 6.
 

 "Firearm" is defined as "a weapon that acts by force of gunpowder."
 
 Wis. Stat. § 167.31
 
 (1)(c).
 

 "Handgun" is defined as "any weapon designed or redesigned, or made or remade, and intended to be fired while held in one hand and to use the energy of an explosive to expel a projectile through a smooth or rifled bore."
 
 Wis. Stat. § 167.31
 
 (1)(cm) (citing
 
 Wis. Stat. § 175.60
 
 (1)(bm) ). Machine guns, short-barreled rifles, and short-barreled shotguns are specifically excepted from the definition of "handgun."
 
 Wis. Stat. § 175.60
 
 (1)(bm).
 

 The Safe Transport Statute does not apply "to a firearm that is placed or possessed on a vehicle that is stationary."
 
 Wis. Stat. § 167.31
 
 (4)(ag).
 

 The State does not contest that Grandberry complied with the Safe Transport Statute, nor do we find any reason to conclude he did not. Thus, we assume without deciding that Grandberry did comply with its terms.
 

 Grandberry refers to his second premise as a "safe harbor." His use of this phrase is an improper inversion of that term of art, as a safe harbor is defined as "a provision (as in a statute or regulation) that affords protection from liability or penalty."
 
 Black's Law Dictionary
 
 1536 (10th ed. 2014). No statute contains a provision affording the protection Grandberry seeks and we decline to either invent one or to contort our reading of the plain language of the statutes to suit Grandberry's purposes.
 
 State ex rel. Kalal v. Circuit Court for Dane Cty.
 
 ,
 
 2004 WI 58
 
 , ¶ 45,
 
 271 Wis. 2d 633
 
 ,
 
 681 N.W.2d 110
 
 ("If the meaning of the statute is plain, we ordinarily stop the inquiry.").
 

 Grandberry bases his "safe harbor" argument on a footnote in a court of appeals decision in which the court clarified that its holding, which concerned whether a firearm was concealed for purposes of the Concealed Carry Statute, "in no way limits the
 
 lawful
 
 placement, possession, or transportation of[ ] unloaded ... and encased[ ] firearms ... in vehicles as permitted by [the Safe Transport Statute]."
 
 State v. Walls
 
 ,
 
 190 Wis. 2d 65
 
 , 69 n.2,
 
 526 N.W.2d 765
 
 (Ct. App. 1994) (emphasis in original). The "safe harbor" argument is relevant only if the statutes are in conflict. Thus, we decline to further consider the merits of Grandberry's reading of
 
 Walls
 
 because we conclude the statutes are not in conflict.
 

 "Although titles are not part of statutes,
 
 Wis. Stat. § 990.001
 
 (6), they may be helpful in interpretation."
 
 Aiello v. Pleasant Prairie
 
 ,
 
 206 Wis. 2d 68
 
 , 73,
 
 556 N.W.2d 697
 
 (1996).
 

 Grandberry cites four cases to support the proposition that Wisconsin courts consider the entire passenger area "within reach," as a matter of law, for purposes of the Concealed Carry Statute. In two of them, we merely considered whether a reasonable finder of fact could conclude that the firearm was "within reach" in the circumstances of each particular case.
 
 State v. Fry
 
 ,
 
 131 Wis. 2d 153
 
 , 182,
 
 388 N.W.2d 565
 
 (1986) (holding reasonable jury could find handgun in glove compartment was within reach of driver),
 
 overruled on other grounds by
 

 State v. Dearborn
 
 ,
 
 2010 WI 84
 
 ,
 
 327 Wis. 2d 252
 
 ,
 
 786 N.W.2d 97
 
 ;
 
 Mularkey v. State
 
 ,
 
 201 Wis. 429
 
 , 432,
 
 230 N.W. 76
 
 (1930) (concluding a handgun on a shelf behind the driver's seat is within reach of the driver). The other two were constitutional challenges to the Concealed Carry Statute, in which the question of whether the firearm was within reach was not at issue.
 
 State v. Fisher
 
 ,
 
 2006 WI 44
 
 , ¶¶ 1-2,
 
 290 Wis. 2d 121
 
 ,
 
 714 N.W.2d 495
 
 ;
 
 State v. Cole
 
 ,
 
 2003 WI 112
 
 , ¶ 49,
 
 264 Wis. 2d 520
 
 ,
 
 665 N.W.2d 328
 
 . Significantly, no decision Grandberry cites-nor any decision we could find-has reviewed a factual finding that the trunk or cargo area of a motor vehicle was "within reach" for purposes of the Concealed Carry Statute.
 
 See
 

 id.
 

 Accordingly, we employ the term "grab area" when referring to Fourth Amendment jurisprudence concerning searches incident to arrest and employ the phrase "within reach" for discussion related to the Concealed Carry Statute.
 

 The result of Grandberry's argument is that any area accessible from the passenger compartment (including the cargo area of minivans, station wagons, SUVs, and the like) is within reach, as a matter of law, because federal courts consider those areas to be within the person's "grab area,"
 
 United States v. Stegall
 
 ,
 
 850 F.3d 981
 
 , 985 (8th Cir. 2017) (citing
 
 United States v. Mayo
 
 ,
 
 394 F.3d 1271
 
 , 1277 (9th Cir. 2005) ).
 

 E.g.
 
 ,
 
 Fry
 
 ,
 
 131 Wis. 2d at 182
 
 ,
 
 388 N.W.2d 565
 
 (affirming jury verdict that handgun in glove compartment was within driver's reach);
 
 State v. Asfoor
 
 ,
 
 75 Wis. 2d 411
 
 , 435,
 
 249 N.W.2d 529
 
 (1977) (affirming jury verdict that handgun on floorboard of motor vehicle was within reach);
 
 Mularkey
 
 ,
 
 201 Wis. at 432
 
 ,
 
 230 N.W. 76
 
 (affirming jury verdict that handgun on shelf behind front seat was within reach);
 
 State v. Keith
 
 ,
 
 175 Wis. 2d 75
 
 , 79,
 
 498 N.W.2d 865
 
 (Ct. App. 1993) (affirming jury verdict that handgun in defendant's purse was within reach).
 

 This court had been using "within reach" for purposes of the Concealed Carry Statute for approximately 39 years before the United States Supreme Court introduced the phrase "within his immediate control" to Fourth Amendment jurisprudence.
 
 See
 

 Mularkey
 
 ,
 
 201 Wis. at 432
 
 ,
 
 230 N.W. 76
 
 ;
 
 Chimel
 
 ,
 
 395 U.S. at 763
 
 ,
 
 89 S.Ct. 2034
 
 .
 

 Grandberry argues that requiring citizens to obtain a concealed carry license puts an economic barrier on their right to bear arms. This argument is rendered moot by our holding that persons without a concealed carry license can comply with both statutes by placing their firearms out of reach. Further, Grandberry raises the economic barrier argument as a bare one-sentence assertion in a footnote and never develops it. We need not address this argument, and given its undeveloped state, it would be imprudent to do so.
 
 State v. Gracia
 
 ,
 
 2013 WI 15
 
 , ¶ 28 n.13,
 
 345 Wis. 2d 488
 
 ,
 
 826 N.W.2d 87
 
 ("we do not usually address undeveloped arguments").
 

 We resist the invitation of Grandberry and the amicus to make broad pronouncements based on hypothetical facts.
 
 See
 

 State v. Steffes
 
 ,
 
 2013 WI 53
 
 , ¶ 27,
 
 347 Wis. 2d 683
 
 ,
 
 832 N.W.2d 101
 
 :
 

 [T]his court does not issue advisory opinions on how a statute could be interpreted to different factual scenarios in future cases.
 
 See
 

 Grotenrath v. Grotenrath
 
 ,
 
 215 Wis. 381
 
 , 384,
 
 254 N.W. 631
 
 (1934) ("[C]ourts will not ordinarily render advisory opinions where the questions propounded have not arisen and may never arise."). Rather, it is our job to adjudicate the dispute in front of us. It is thus not necessary for us to resolve the hypotheticals laid out by [the Defendant].
 

 The terms "unconstitutionally vague" and "void for vagueness" describe the same concept and are thus used interchangeably.
 
 See
 

 State v. McManus
 
 ,
 
 152 Wis. 2d 113
 
 , 135,
 
 447 N.W.2d 654
 
 (1989).
 

 This is in contrast to a facial challenge, which requires the court to determine whether a statute may be constitutionally applied in any circumstance.
 
 Cole
 
 ,
 
 264 Wis. 2d 520
 
 , ¶ 30,
 
 665 N.W.2d 328
 
 .
 

 Because this is an as-applied challenge,
 
 see
 

 supra
 
 ¶ 32, our conclusion that the Concealed Carry Statute is constitutionally applied to Grandberry does not mean that the Concealed Carry Statute is constitutionally applied in all circumstances. If, for instance, this opinion opens the wide floodgates to the variety and volume of prosecutions posited by Grandberry and the amicus, it will be up to the relevant courts to determine whether the Concealed Carry Statute may be constitutionally applied in each of those particular circumstances.
 
 See
 

 supra
 
 ¶ 29 n.20.