# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP1806

†Petition for Review filed

Complete Title of Case:

IN THE MATTER OF THE MENTAL COMMITMENT OF **L. X. D.-O.**:

**OUTAGAMIE COUNTY,**

      **PETITIONER-RESPONDENT,**

  **V.**

**L. X. D.-O.,**

      **†RESPONDENT-APPELLANT.**

---

| | |
|---|---|
| Opinion Filed: | March 7, 2023 |
| Submitted on Briefs: | December 9, 2022 |
| Oral Argument: | |

---

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

---

Appellant
ATTORNEYS:      On behalf of the respondent-appellant, the cause was submitted on the brief of *Elizabeth Rich* of *Rich Law SC*, Plymouth.

Respondent
ATTORNEYS:      On behalf of the petitioner-respondent, the cause was submitted on the brief of *Kyle J. Sargent*, corporation counsel, Appleton.

**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 7, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No. 2020AP1806**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020ME145

**IN COURT OF APPEALS**

---

IN THE MATTER OF THE MENTAL COMMITMENT OF L. X. D.-O.:

OUTAGAMIE COUNTY,

    PETITIONER-RESPONDENT,

  V.

L. X. D.-O.,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1      STARK, P.J.[1]   On June 9, 2020, Larry[2] stipulated to an initial WIS. STAT. ch. 51 mental commitment order and was involuntarily committed.  At that time, the circuit court also entered an order allowing for Larry to be involuntarily administered medication and treatment (the medication order).  In this appeal, Larry challenges only the medication order.  He argues that the examiners' testimony at the final hearing was insufficient to meet Outagamie County's burden to prove that he was not competent to refuse medication or treatment.  He further argues that in issuing the medication order, the court improperly relied on an examiner's report prepared pursuant to WIS. STAT. § 51.20(9)(a)5. that was not admitted into evidence.

¶2      In response, the County argues, among other things, that this appeal is moot.  While we agree that this appeal is moot given that the medication order has expired, we conclude that two exceptions to the mootness doctrine apply:  the issue is likely to arise again and should be resolved by this court to avoid uncertainty and the issue is capable and likely of repetition yet evades review.

¶3      Addressing the merits of Larry's arguments, we conclude that the *testimony* of the court-appointed examiner was insufficient to prove that Larry was not competent to refuse medication or treatment.  We further conclude, however, that an examiner's report prepared pursuant to WIS. STAT. § 51.20(9)(a)5. need not be admitted into evidence for the circuit court to consider the report during initial commitment proceedings.  Accordingly, the court appropriately considered both the

---

[1]  By order dated January 17, 2023, this court granted a motion for a three-judge panel pursuant to WIS. STAT. RULE 809.41(1) (2021-22).  All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2]  For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than his initials.

examiner's report and the examiner's testimony at the final hearing and concluded that the County's evidence was sufficient to prove that Larry was not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4.b. We therefore affirm.

## BACKGROUND

¶4      On May 26, 2020, Larry was placed under an emergency detention after law enforcement arrived at a Kwik Trip convenience store to conduct a welfare check and found Larry "very agitated" and "in some sort of medical duress." According to the incident report, Larry had been in the bathroom for over thirty minutes and was found wearing only a pair of shorts and was "splashing water all over himself" to the point that he was "soaking wet." Larry told officers that he "was really hot and just needed to cool down" and kept repeating that he did not "fucking care anymore." He was transported to the hospital.

¶5      Larry did not contest entry of an initial commitment order. His only challenge was to the medication order based on his concern that he was being overmedicated with psychotropic medications.[3] Prior to the final hearing, three psychiatrists prepared examination reports. Doctor Marshall Bales examined Larry in person; prepared a report, filed with the circuit court on June 1, 2020; and testified at the final hearing. Bales' report, however, was not entered into evidence at the hearing. Doctor Michele Andrade also prepared a report, which was filed with the court on June 4, 2020. Andrade did not personally examine Larry prior to completing her report, as Larry "refused to participate in the interview." Andrade

---

[3] On May 28, 2020, a court commissioner held a probable cause hearing, and Larry stipulated to probable cause for the commitment but not for the medication order. The commissioner found probable cause to issue the medication order at that time.

did not testify at the final hearing, and her report was also not received into evidence. Finally, Dr. Gale Tasch examined Larry during a "Telehealth" meeting; prepared a report, filed with the court on June 8, 2020; and testified at the hearing.[4] Her report was admitted into evidence.

¶6    At the final hearing, the only issues before the circuit court were whether inpatient treatment was the least restrictive placement for Larry and whether Larry was competent to refuse medication. Larry's counsel explained that Larry was "not necessarily fighting the medication order," but Larry had a real concern that he was being overmedicated. Counsel asked the court to "not have the medication order [to] allow [Larry] to make the decision about what medications [he was taking] and actually make the doctors … work with him."

¶7    Tasch testified that she began working with Larry approximately two years ago when Larry's mother first contacted her "because [Larry] was under a commitment and receiving extreme doses of psychiatric medication" and "he was physically ill from getting such high doses of medicines."[5] Larry's "main problem, in [Tasch's] opinion, is posttraumatic stress disorder" and "[m]edications are really not the best treatment at all." According to Tasch, Larry "was very psychotic when he was admitted" on the emergency detention, but he was suffering from "self-limiting psychosis from using methamphetamine." Tasch explained that Larry is "not psychotic anymore" and "[d]oesn't need antipsychotic medications," but she

_____

[4] Larry filed a request for Tasch's evaluation under WIS. STAT. § 51.20(9)(a)2., which the circuit court granted.

[5] Tasch's report stated that Larry had been under commitment on two prior occasions. Bales' report also stated that Larry had been committed in the past and had "been on commitments since his early teens."

observed that "if he chooses to use meth again, it's likely he would become psychotic again."

¶8    Tasch's testimony mirrored the substance of her report on this point. In her report, Tasch opined that Larry is neither "incapable of expressing an understanding of the advantages, disadvantages and alternatives to accepting the recommended medication or treatment" nor is he "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse the recommended medication or treatment." Tasch stated that Larry "has been harmed in the past after being given [antipsychotic medications] on a monthly injection basis at extremely high doses. The medication made him physically ill and impaired his ability to function" and "should be avoided at this time." She further explained that Larry "is willing to get help" and that "[t]he best hope for [Larry] is substance abuse treatment and appropriate mental health intensive counseling on an outpatient basis."

¶9    In contrast, Bales testified that Larry was not competent to refuse medication. He explained that Larry suffers from schizoaffective disorder "complicated of late by substance abuse" and that during his evaluation Larry was irritable, "really paranoid," agitated, and hostile. According to Bales, Larry "will not want to take psych meds like antipsychotics or mood stabilizers, but he will then use street drugs. So that is the key point here." Bales further testified that Larry "needs some inpatient care to get him more regulated" because "he has a very serious history of dangerousness whether using drugs or not. And so it's really catastrophic—him using methamphetamine." Bales testified that when he attempted to engage Larry in a discussion regarding medications, Larry "walked down the hall just refusing to even have a dialogue." Bales explained that if Larry

was concerned with the dose of his medication, "he should go through the channels he needs to go through to have his provider lower the dose…. [H]e needs to take that up with his prescriber."

¶10 At the conclusion of the hearing on June 9, 2020, the circuit court committed Larry for a period of six months pursuant to his stipulation to the initial commitment order.[6] The court also entered the medication order and ordered inpatient treatment. It concluded, "based on the testimony, which is from Dr. Bales and his report," that "[t]here's a history here … with the doctors and also with [Larry's] own use of street drugs that demonstrate[s] a lack of competence and insight, substantial understanding of the pros and cons, the negatives and the positives of medication" and that from "a statutory standpoint … he's not competent to make his decisions on medication." The court recognized that "the sentiments raised by [Larry] and his attorney are legitimate and have validity," but the court stated it was "not in a position … to micromanage the follow[-]up treatment." Larry appeals, challenging only the medication order.[7]

## DISCUSSION

---

[6] On the record, the circuit court noted that Larry is "suffering from mental illness that fits the statutory requirement" and that "[e]ven his own doctor"—Tasch—observed in her "report that '[Larry] is unable to care for himself. He is homeless. He has severe symptoms of posttraumatic stress disorder. And also he is unable to control his substance abuse disorder.' [Tasch] says at this time, he is a danger to himself. And there's no real dispute on that."

[7] We note that this case has been pending for some time. The orders for commitment and involuntary medication and treatment were entered on June 9, 2020, and the notice of appeal was filed on October 28, 2020. Thus, both orders have long since expired. In Larry's initial brief, he argued that this case was not moot, and, in response, the County sought to supplement the record with a subsequent recommitment and medication order entered after the orders at issue in this case. As a result, on September 13, 2021, we ordered this case held in abeyance pending our supreme court's decision in *Sauk County v. S.A.M.*, 2022 WI 46, 402 Wis. 2d 379, 975 N.W.2d 162. After *S.A.M.* was released, Larry sought and was granted permission to file a substitute brief, which he did. The County then filed its response brief, and Larry did not file a reply brief.

## I. Mootness

¶11     Initially, the County argues that Larry's appeal of his medication order is moot.  Mootness is an issue that this court reviews de novo.  ***Waukesha County v. S.L.L.***, 2019 WI 66, ¶10, 387 Wis. 2d 333, 929 N.W.2d 140.  "An issue is moot when its resolution will have no practical effect on the underlying controversy." ***Portage County v. J.W.K.***, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (citation omitted).

¶12     It is now well established under Wisconsin law that an appeal of an expired commitment order—whether an initial commitment order or a recommitment order—is not moot due to continuing collateral consequences of the firearms ban required under a commitment order, as well as liability for the cost of care.  *See **Sauk County v. S.A.M.***, 2022 WI 46, ¶¶21-27, 402 Wis. 2d 379, 975 N.W.2d 162; ***Marathon County v. D.K.***, 2020 WI 8, ¶25, 390 Wis. 2d 50, 937 N.W.2d 901; *see also* WIS. STAT. § 51.20(13)(cv)1.  As noted above, however, Larry challenges the medication order in this case, but he does not otherwise challenge the commitment order.  The County argues that there are no collateral consequences that proceed directly from the medication order itself and that Larry's appeal from the medication order is therefore moot.

¶13     The County argues that neither ***S.A.M.*** nor ***D.K.*** is applicable under the circumstances, as the holdings in those cases were based on commitment orders, not medication orders.  While the County acknowledges that a commitment order is a prerequisite for a medication order under WIS. STAT. § 51.61(1)(g), it argues that "it does not follow that the collateral consequences associated with the commitment order attach themselves to the medication order …. [A]ny collateral consequences

Larry relies on to render his case not moot still exist even if the medication order is vacated."

¶14     We agree that, under the circumstances, our review of the merits of Larry's appeal will have no "practical effect" on the collateral consequences—in this case, the firearms ban and the cost of care—that exist by virtue of the valid commitment order. *See **D.K.***, 390 Wis. 2d 50, ¶25. Those collateral consequences will remain in effect under the valid commitment order regardless of our decision on appeal.[8] *See **id.*** Thus, we conclude that this appeal is moot because there is no "causal relationship" between the medication order *alone* and the collateral consequences stemming from the commitment. *See **id.***, ¶24.

¶15     Nevertheless, we may review an otherwise moot issue "in 'exceptional or compelling circumstances.'" ***J.W.K.***, 386 Wis. 2d 672, ¶12 (citation omitted).

> There are several established exceptions under which this court may elect to address moot issues: (1) "the issues are of great public importance;" (2) "the constitutionality of a statute is involved;" (3) the situation arises so often "a definitive decision is essential to guide the [circuit] courts;" (4) "the issue is likely to arise again and should be resolved by the court to avoid uncertainty;" or (5) the issue is "capable and likely of repetition and yet evades review."

***Id.*** (citation omitted).

¶16     We conclude that two exceptions to the mootness doctrine apply in this case:  the fourth exception, which applies when "the issue is likely to arise again

---

[8] WISCONSIN STAT. § 46.10(2) provides that a person subject to a WIS. STAT. ch. 51 commitment "shall be liable for the cost of the care, maintenance, services and supplies" related to the commitment.  Larry argues that those costs would include the medication, as well as its administration and monitoring.  Thus, we acknowledge that an argument could be made that the costs of care may be reduced if a medication order were vacated.  However, Larry does not develop this argument on appeal.

and should be resolved by the court to avoid uncertainty"; and the fifth exception, which applies when the issue is "capable and likely of repetition and yet evades review." ***Id.*** (citation omitted).

¶17 Addressing the fifth exception first, Larry argues that exception is applicable because "through no fault of [Larry] and similarly situated respondent[s]-appellants, this [s]tate's public defender and appellate system is so back-logged that virtually no [WIS. STAT. ch.] 51 appeals of initial commitments can be heard before expiration of the commitment and accompanying involuntary medication order." The County recognizes, however, that our supreme court has explained that this exception "is limited to situations involving 'a reasonable expectation that the *same* complaining party would be subjected to the *same action* again.'" ***J.W.K.***, 386 Wis. 2d 672, ¶30 (citation omitted). Accordingly, the County argues that "Larry made no argument as to how he would be subjected to the same action in the future. He has not shown how this medication order will affect subsequent medication orders; rather, he argued that the evidence was insufficient during a specific hearing."

¶18 We disagree. There is ample evidence in the record to suggest that Larry's mental health concerns are ongoing and that Larry may likely be subject to a WIS. STAT. ch. 51 commitment with a medication order again in the future.[9] Thus, we conclude that the same legal issue will likely arise again specifically for Larry. Further, we agree with Larry, both in regard to him as well as similarly situated

---

[9] As noted above, Larry had been subject to multiple commitment proceedings in the past. *See supra* note 5. Additionally, the appellate record contains the County's motion to supplement the record on appeal, filed on March 2, 2021, which included a copy of a subsequent Order for Extension of Commitment with Medication Order entered on January 28, 2021. The County, however, withdrew that motion, and, therefore, the subsequent recommitment and medication order is not part of the record on appeal.

individuals, given the short duration of commitment orders and the corresponding medication orders—six months for initial commitments and one year for recommitments, *see* WIS. STAT. § 51.20(13)(g)1.—the issue presented by this appeal is likely to evade review because appellate review may not be accomplished before a commitment order expires.

¶19    Regarding the fourth exception, as we explain further below, Larry's challenge to his medication order does not implicate only the sufficiency of the evidence in this particular case.  His challenge also addresses under what circumstances and to what extent an examiner's report may be considered by the circuit court in initial commitment proceedings.  Thus, this appeal will clarify and provide guidance in evaluating sufficiency of the evidence challenges in other cases, which will be of practical assistance to future litigants.  Therefore, although we conclude that Larry's appeal of his medication order is moot, given our determination that the fourth and fifth mootness exceptions apply, we address the merits of his arguments.

## II.  Sufficiency of the Evidence

¶20    On the merits, Larry argues that the County failed to meet its burden to prove that he was not competent to refuse medication under WIS. STAT. § 51.61(1)(g)4.b.  Larry first argues that Bales' report cannot be used to support the medication order because the County failed to move the report into evidence.  Thus, according to Larry, the evidence supporting the medication order is limited to Bales' testimony, which is insufficient under the law.

¶21    The involuntary administration of medication to a nonconsenting person "represents a substantial interference with that person's liberty." *See Outagamie County v. Melanie L.*, 2013 WI 67, ¶43, 349 Wis. 2d 148, 833

10

N.W.2d 607 (citation omitted). Thus, "a person has the right to refuse medication unless a court determines that the person is incompetent to make such a decision," and "an individual is presumed competent to refuse medication or treatment." *Id.*, ¶¶53, 89; *see also* WIS. STAT. § 51.61(1)(g).

¶22 An individual "who is mentally ill and who has received the requisite explanation of the advantages and disadvantages of and alternatives to medication" can be found incompetent to refuse medication in two ways. *Melanie L.*, 349 Wis. 2d 148, ¶54. The first way is if "[t]he individual is incapable of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives." WIS. STAT. § 51.61(1)(g)4.a. The second way is if "[t]he individual is substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his or her mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment." Sec. 51.61(1)(g)4.b. The County bears the burden to establish that an individual is not competent to refuse medication by clear and convincing evidence. WIS. STAT. § 51.20(13)(e); *Melanie L.*, 349 Wis. 2d 148, ¶37. We will uphold the circuit court's findings of fact unless they are clearly erroneous, but we review whether the County met its burden de novo. *Melanie L.*, 349 Wis. 2d 148, ¶¶38-39.

### a. Bales' Testimony Alone Was Insufficient to Establish that Larry Was Not Competent to Refuse Medication

¶23 On appeal, Larry argues that "[t]he evidence presented at [his] final hearing does not come close to meeting the requisite standard for issuance of an involuntary medication order." According to Larry,

> Bales testified that [Larry] was mentally ill and drug dependent; but he did not specifically testify that, because of those conditions, [Larry] was either incapable of expressing an understanding of the advantages and disadvantages of

11

accepting medication or treatment and the alternatives; or was substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness, developmental disability, alcoholism or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment. Those words were never spoken by Dr. Bales or counsel for the County. Instead, both made vague references to whether [Larry] was "competent" to make decisions regarding medication. That is a conclusion; it is not the application of facts to statutory standards required by *Melanie L.*

¶24      At the final hearing, Bales testified that Larry was not "competent to make the decision regarding his medication." When asked to explain why, Bales responded:

> Well, historically he has sought out this psychiatrist that he sees over the telemedicine that is—has a viewpoint that I disagree with. That's all I know to say.
>
> I think that [Larry] needs psychotropic medications. And that he somehow really irrationally embellishes side effects, minimizes benefits, and just is not willing to consider psychotropics yet. He has used profound amounts of methamphetamine of late. So I just don't think [Larry] is reasonable.
>
> Now when I attempted to talk about the psychotropics, frankly some of the medicine review was to the back of his head as he walked out of the room. And I did the best I could with him on the medication topic. But he was oppositional and angry during the entire interview. But on the medication topic, I said some of the medicine reviews—he walked down the hall just refusing to even have a dialogue. And he wouldn't repeat back anything about the medicine. He just would dismiss it. And overall, I think the med order is needed.

On cross-examination, Bales explained that Larry "was always … trying to lower the doses, or having problems with the medications," and he emphasized that "in general, I am telling you he tends to minimize the need for psychotropics and wants to be off of them. And will really unreasonably embellish side effects and minimize benefits."

¶25 We agree that Bales' hearing testimony *alone* was insufficient to establish that Larry was not competent to refuse medication. In *Melanie L.*, our supreme court reversed an involuntary medication order under WIS. STAT. § 51.61(1)(g)4.b. on the basis that the county did not meet its burden of proof because the expert misstated the substance of the statutory standard. *Melanie L.*, 349 Wis. 2d 148, ¶¶6, 91, 96-97. In reaching its decision, the court expressed that a hearing on an involuntary medication order

> cannot be perfunctory under the law. Attention to detail is important. A county cannot expect that a judge concerned about a person with mental illness will automatically approve an involuntary medication order, even though the person before the court has chosen a course of action that the county disapproves…. This court does not have the option of revising the statute to make the County's work or burden easier.

*Id.*, ¶94. The court explained that "[a] person subject to a possible mental commitment or a possible involuntary medication order is entitled to receive from one or more medical professionals a reasonable explanation of proposed medication." *Id.*, ¶67. Further, the court stated that "[m]edical experts must apply the standards set out in the competency statute. An expert's use of different language to explain his or her conclusions should be linked back to the standards in the statute." *Id.*, ¶97. Thus, "it is the responsibility of medical experts who appear as witnesses for the county to explain how they probed the issue of whether the person can 'apply' his or her understanding to his or her own mental condition." *Id.*, ¶75.

¶26 Here, based on Bales' hearing testimony, it is entirely unclear under which standard of WIS. STAT. § 51.61(1)(g)4. Bales believed that Larry was not competent to refuse medication. Initially, we note that "the circuit court must first be satisfied that the advantages and disadvantages of, and the alternatives to,

medication have been adequately explained to the patient." ***Virgil D. v. Rock County***, 189 Wis. 2d 1, 14, 524 N.W.2d 894 (1994). Bales' perfunctory statement that he "said some of the medicine reviews" and that he "attempted to talk about the psychotropics" provides neither the circuit court nor this court with any basis to determine whether Larry received "a reasonable explanation of proposed medication," which is a requirement under § 51.61(1)(g)4. *See **Melanie L.***, 349 Wis. 2d 148, ¶67.

¶27 Next, Bales clearly opined that Larry was not competent to make a decision regarding his medications, but beyond that statement, he did not specifically apply the statutory language to explain how or why he made that determination. Bales' testimony certainly supports a finding that Larry embellishes side effects, minimizes benefits of the psychotropic medications, is not willing to consider medications, and is irrational and unreasonable with regard to his choice to abuse methamphetamines rather than take medications for his mental illness. However, we can only infer from these statements that Larry is either "incapable of expressing an understanding" or "substantially incapable of applying an understanding" to make an informed choice regarding medications. In fact, an argument could be made based on Bales' testimony that Larry *is capable* of expressing an understanding of the medications because he consistently asks for the dose to be reduced, he sought out a different doctor who is not in favor of medications, and he knows enough to embellish side effects.

¶28 While we acknowledge that "***Melanie L.*** does not stand for the proposition that we require witnesses or circuit courts to recite magic words," we conclude that Bales' testimony was unclear, and he failed to link his testimony "back to the standards in the statute." *See **D.K.***, 390 Wis. 2d 50, ¶54. Thus, the

14

County has failed to establish, through Bales' testimony alone, that Larry was not competent to refuse medication or treatment.

>    b.  *The Circuit Court Properly Relied on Both Bales' Testimony and His Report*

¶29     The County argues, however, that the circuit court determined that the County met its burden of proof through Bales' testimony "and his report." Accordingly, the County contends that we may rely on both to affirm the court's conclusion that the County established the statutory requirements for a medication order.  Larry asserts that Bales' "report was not entered into evidence and therefore could not be considered by the [circuit] court."  Larry relies on ***Langlade County v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, for this proposition.

¶30     In ***D.J.W.***, our supreme court explained in a footnote that although the examiner "testified that he produced a report after his examination of D.J.W.," the report itself "was never admitted into evidence at the recommitment hearing. Accordingly, the evidence presented by the County at the recommitment hearing consisted solely of [the examiner's] testimony."  ***Id.***, ¶7 n.4.  The County counters that Bales' report was properly considered as evidence in this case under WIS. STAT. § 51.20(9)(a)5. and that ***D.J.W.*** is distinguishable.  For the reasons that follow, we agree.

¶31     The interpretation and application of WIS. STAT. § 51.20(9)(a)5. is integral to Larry's challenge to Bales' report on appeal.  The proper interpretation of a statute presents a question of law that we review independently.  ***State v. Grandberry***, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214.  "[S]tatutory interpretation 'begins with the language of the statute.  If the meaning of the statute is plain, we ordinarily stop the inquiry.'"  ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).

"Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶32    This case involves an initial commitment under WIS. STAT. ch. 51.  In an initial commitment proceeding, once the circuit court finds probable cause to believe the allegations in the petition, the court must appoint two licensed doctors to "personally examine the subject individual."  WIS. STAT. § 51.20(9)(a)1.  Those examiners are then required to

> personally observe and examine the subject individual at any suitable place and satisfy themselves, if reasonably possible, as to the individual's mental condition, and *shall make independent reports to the court*.  The subject individual's treatment records shall be available to the examiners….  *A written report shall be made of all such examinations and filed with the court*.  The report and testimony, *if any*, by the examiners shall be based on beliefs to a reasonable degree of medical certainty, or professional certainty if an examiner is a psychologist, in regard to the existence of the conditions described in sub. (1), and the appropriateness of various treatment modalities or facilities.  If the examiners are unable to make conclusions to a reasonable degree of medical or professional certainty, the examiners shall so state in their report and testimony, *if any*.

Sec. 51.20(9)(a)5. (emphasis added).

¶33    It is clear from WIS. STAT. § 51.20(9)(a)5.'s plain language that the examiners' reports are created for use by the circuit court.  The court appoints the examiners to create the reports.  *Id.*  The reports are then "ma[de] … to the court" and "filed with the court."  *Id.*  Thus, the reports are not created for the parties' benefit such that the parties must then seek to admit the evidence into the record.  Further, § 51.20(9)(a)5. makes a distinction between an examiner's report and his or her testimony.  In doing so, the statute clarifies that testimony is not necessary, as demonstrated through the statute's repeated use of the phrase "if any" when

referencing "testimony." *Id.* If, as the statute clearly states, testimony from the examiners is not required to support an initial commitment, then the court must be able to review the examiners' reports regardless of any testimony or foundation ordinarily necessary to admit this type of evidence.

¶34    Thus, we conclude that under WIS. STAT. § 51.20(9)(a)5., an examiner's report need not be admitted into evidence for a circuit court to consider the report during initial commitment proceedings. Accordingly, the circuit court, here, properly considered and relied upon Bales' report in issuing Larry's medication order.

¶35    To the extent that our conclusion here conflicts with our supreme court's discussion in *D.J.W.*, we distinguish *D.J.W.* on the basis that it involved a recommitment, while this case involves an initial commitment.[10] As our supreme court recently explained in *S.L.L.*, "the procedure for extending a person's commitment is governed by WIS. STAT. § 51.20(10) through (13), not § 51.20(1)." *S.L.L.*, 387 Wis. 2d 333, ¶24. To reach this conclusion, the court relied on § 51.20(13)(g)3., which provides in relevant part: "Upon application for extension of a commitment…, the court shall proceed under subs. (10) to (13)." Thus, § 51.20(9) does not apply to recommitment hearings. *See also Rusk County v. A.A.*, Nos. 2019AP839 and 2020AP1580, unpublished slip op. ¶¶53-55 (WI App July 20,

---

[10] In *Marathon County v. D.K.*, 2020 WI 8, ¶54, 390 Wis. 2d 50, 937 N.W.2d 901, an initial commitment case, our supreme court found that the expert's testimony was sufficient to sustain the county's burden of proof on the issue of involuntary administration of medication and treatment. However, the court did not address whether the circuit court could rely upon the examiner's report. *See id.*, ¶6 n.4 (noting that the court "need not decide whether filing [the examiner's] report with the circuit court was sufficient to enter the report into evidence" because "the circuit court did not rely on it when it made factual findings and legal conclusions").

2021) (Stark, J., concurring) (observing that "**S.L.L.**'s holding that only subsecs. (10) through (13) of … § 51.20 apply to recommitment proceedings has additional implications"); **Dodge County v. L.A.S.**, No. 2017AP302, unpublished slip op. (WI App Aug. 17, 2017) (concluding that § 51.20(9) does not apply to extension proceedings; thus, a nurse practitioner's testimony was found sufficient at a recommitment hearing under the statute despite § 51.20(9)'s requirement of examination and reporting by two licensed physicians or psychologists).[11]

¶36 Therefore, in a recommitment hearing, as in **D.J.W.**, an examiner's report must be received into evidence to be considered by the circuit court because WIS. STAT. § 51.20 does not provide an alternative statutory procedure for the court to review and consider the examiner's report apart from admission of the report into the record under the rules of evidence in civil actions. *See* § 51.20(10)(c). In an initial commitment, however, as is the case here, and for the reasons outlined above, the court may consider an examiner's report without entering it into evidence by virtue of § 51.20(9)(a)5.

### c. The County Met Its Burden to Show that Larry Was Not Competent to Refuse Medication or Treatment

¶37 Given our determination that the circuit court could properly consider both Bales' testimony and his report, we conclude that the County met its burden to show that Larry was not competent to refuse medication or treatment. First, as noted above, WIS. STAT. § 51.61(1)(g)4. requires that "the advantages and disadvantages of and alternatives to accepting the particular medication or treatment" must first be "explained to the individual." *See* **Melanie L.**, 349 Wis. 2d 148, ¶¶53-54; **Virgil D.**,

---

[11] Unpublished opinions authored by a member of a three-judge panel or by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

189 Wis. 2d at 14. Larry argues both that he was not provided "a complete discussion"—because Bales "testified that part of his attempted review was 'to the back of [Larry's] head'"—and that "three doctors in their reports listed different medication[s] they thought [Larry] was taking."

¶38 We conclude that Bales' report demonstrates that his medication discussion with Larry was sufficient to meet the requirements under WIS. STAT. § 51.61(1)(g)4. In *Melanie L.*, our supreme court explained:

> A person subject to a possible mental commitment or a possible involuntary medication order is entitled to receive from one or more medical professionals a reasonable explanation of proposed medication. The explanation should include why a particular drug is being prescribed, what the advantages of the drug are expected to be, what side effects may be anticipated or are possible, and whether there are reasonable alternatives to the prescribed medication. The explanation should be timely, and, ideally, it should be periodically repeated and reinforced. Medical professionals and other professionals should document the timing and frequency of their explanations so that, if necessary, they have documentary evidence to help establish this element in court.

*Melanie L.*, 349 Wis. 2d 148, ¶67. Bales' report demonstrates that he provided Larry with a "reasonable explanation of proposed medication." *See id.* In his report, Bales listed the specific advantages, disadvantages, and alternatives to the recommended medication that he explained to Larry.[12] Bales further testified that he "did the best [he] could with [Larry] on the medication topic."

---

[12] The advantages explained to Larry included: "[s]tabilization of mood, improvement in reality orientation, improvement in sleep patterns, decrease in irritability and agitation, [and] decrease in anxiety." The disadvantages explained to Larry included: "[m]etabolic issues, such as weight gain; occasional issues with movement problems, such as tremors, restlessness, or tardive dyskinesia; occasional mild sedation[;] occasional gastrointestinal issues (usually quite mild)." The alternatives to the recommended medication explained to Larry included: "[p]sychotherapy, group therapy, [and] stress management tactics."

¶39    On appeal, Larry attempts to capitalize on the fact that Bales also explained at the hearing and in his report that Larry "was uncooperative, angry, and paranoid, so the medication review was limited" and "frankly some of the medicine review was to the back of [Larry's] head as he walked out of the room." At the final hearing, Bales explained that Larry "was oppositional and angry during the entire interview," and on the medication topic, "he walked down the hall just refusing to even have a dialogue. And he wouldn't repeat back anything about the medicine. He just would dismiss it." Thus, according to Larry, the statutory requirements were not satisfied because Bales admitted that "he did not have a complete discussion of the advantages and disadvantages of, and alternatives to, the specific psychotropic medicines prescribed."

¶40    We conclude that under the facts of this case, Larry's argument is unpersuasive. Larry, by his own express conduct, refused to engage with Bales to receive the full, required explanations. Larry cannot now assert that his efforts to avoid the medication discussion should defeat the medication order. *See **Waukesha County v. M.J.S.***, No. 2017AP1843, unpublished slip op. ¶29 (WI App Aug. 1, 2018) ("We agree M.J.S. cannot just plug his ears with his fingers to avoid hearing the advantages, disadvantages, and alternatives to treatment, and then subsequently complain that he was not provided the statutory explanation."); ***Walworth County v. C.A.E.***, No. 2020AP834-FT, unpublished slip op. ¶22 (WI App Sept. 16, 2020) (same). As the County explained, if we were to agree with Larry in this circumstance, "it would be devastating to a county's ability to treat patients in Chapter 51 commitments and would produce an absurd result. Patients could avoid the discussion, and consequently a medication order, simply by walking away from the conversation." *See **G.O.T. v. Rock County***, 151 Wis. 2d 629, 634, 445 N.W.2d

697 (Ct. App. 1989) ("Absurd constructions of statutes are to be avoided."). Thus, we conclude that Larry received the requisite explanation.

¶41    Larry also argues that the medication explanation was "meaningless" because the doctors' reports listed different medications for Larry. Our review of the record, however, demonstrates that only Andrade's examination report differed as to Larry's medications, while Bales' and Tasch's reports listed the same medications—Haldol, Ativan, and Trazodone. Larry does not argue that Bales' and Tasch's reports were incorrect as to the medications he was taking; therefore, their discussions with him regarding those medications were appropriate and not meaningless. The fact that Andrade's report listed different medications is irrelevant considering that Larry refused to participate in that interview and, therefore, Andrade did not have a medication discussion with Larry. Furthermore, the circuit court did not rely on Andrade's report or testimony in granting the medication order.

¶42    Considering all the evidence, we conclude that the County met its burden to prove that Larry was not competent to refuse medication or treatment under WIS. STAT. § 51.61(1)(g)4.b.[13] Bales' report explained his opinion that Larry is "substantially incapable of applying an understanding of the advantages, disadvantages and alternatives to his … mental illness … or drug dependence in order to make an informed choice as to whether to accept or refuse medication or treatment" in the following manner:

> [Larry] could not weigh the pros and cons of psychotropics. He has an unreasonable opposition to psychotropics. He embellished side effects and minimized

---

[13] In his report, Bales marked "yes" to both standards under WIS. STAT. § 51.61(1)(g)4.; however, given that we review de novo whether the County met its burden, we will consider only whether the County met its burden under § 51.61(1)(g)4.b.

benefits. He has abused street drugs extensively. His motivation to comply with medication is poor. Therefore, it is my opinion with a reasonable degree of medical certainty that he is not competent to refuse psychotropic medication, and an order to treat is requested.

¶43 During his testimony, Bales further expanded upon the statements in his report, explaining that he was familiar with Larry and his history because he had "seen him for several court violations" and had previously been his treating psychiatrist. Bales testified that Larry "wouldn't repeat back anything about the medicine" and "would dismiss it" and that Larry "irrationally embellishes side effects, minimizes benefits, and just is not willing to consider psychotopics yet." Bales further stated that Larry's use of methamphetamine was "alarming" and, given his "very serious history of dangerousness whether using drugs or not," "really catastrophic."

¶44 Bales' testimony and report support a finding that Larry embellishes side effects and minimizes benefits of the psychotropic medications, is not willing to consider medications, and is irrational and unreasonable with regard to his choice to abuse methamphetamines rather than take medications for his mental illness. While Larry clearly understands that he has a mental illness—based, among other things, on his stipulation to his commitment order—we conclude that his failure to fully engage with Bales regarding the proposed medications and treatment helped form a sufficient basis for the medication order. The County has established that Larry is not able "to process and apply the information available to [his] own condition" in order to make an informed choice regarding medication. *See Melanie L.*, 349 Wis. 2d 148, ¶78. Accordingly, we agree that Bales' testimony and report, considered collectively, established by clear and convincing evidence that Larry was not competent to refuse medication or treatment, and the circuit court did not err by

22

relying upon both Bales' testimony and report.  We therefore affirm the medication order.

> *By the Court.*—Order affirmed.