# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:     2022AP1567

Complete Title of Case:

CARL A. RICCIARDI AND PHYLLIS RICCIARDI,

PLAINTIFFS-APPELLANTS,

V.

TOWN OF LAKE,

DEFENDANT-RESPONDENT,

RURAL MUTUAL INSURANCE COMPANY,

INTERVENING DEFENDANT.

| | |
|---|---|
| Opinion Filed: | December 5, 2023 |
| Submitted on Briefs: | May 16, 2023 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark, P.J., Hruz and Gill, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:        On behalf of the plaintiffs-appellants, the cause was submitted on the
                  briefs of *Daniel Snyder*, Park Falls.

Respondent
ATTORNEYS:        On behalf of the defendant-respondent, the cause was submitted on the
                  brief of *Michael J. Roman* of *Klinner Kramer Shull LLP*, Wausau.

COURT OF APPEALS
DECISION
DATED AND FILED

December 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2022AP1567**

STATE OF WISCONSIN

Cir. Ct. No.  **2019CV58**

IN COURT OF APPEALS

---

CARL A. RICCIARDI AND PHYLLIS RICCIARDI,

   PLAINTIFFS-APPELLANTS,

 V.

TOWN OF LAKE,

   DEFENDANT-RESPONDENT,

RURAL MUTUAL INSURANCE COMPANY,

   INTERVENING DEFENDANT.

---

APPEAL from a judgment of the circuit court for Price County: KEVIN G. KLEIN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

¶1    STARK, P.J.   Carl A. and Phyllis Ricciardi seek damages against the Town of Lake, under theories of negligence, private nuisance, and inverse

condemnation for flooding on their property that they claim was caused by the Town's faulty repair or reconstruction of a road abutting their property.[1] The Ricciardis appeal from the circuit court's order granting summary judgment to the Town and dismissing their lawsuit with prejudice.

¶2      The circuit court concluded that the Ricciardis' claims were barred by WIS. STAT. § 88.87(2) (2021-22),[2] which provides the exclusive remedy for claims against municipalities resulting from flooding allegedly caused by the construction or repair of a highway. Under § 88.87(2)(c), a property owner damaged by the construction or maintenance of a highway or railroad grade must file a notice of claim "with the appropriate governmental agency or railroad company" "within 3 years after the alleged damage occurred" as a prerequisite to "bring[ing] an action in inverse condemnation under [WIS. STAT.] ch. 32 or su[ing] for such other relief, other than damages, as may be just and equitable."

¶3      The circuit court determined that the Ricciardis' common law claims for damages were preempted by the statute. It further concluded that the Ricciardis failed to establish that the three-year notice provisions of WIS. STAT. § 88.87(2)(c) or (2)(d) were timely satisfied. Therefore, under our supreme court's recent decision in *Southport Commons, LLC v. DOT*, 2021 WI 52, 397 Wis. 2d 362, 960 N.W.2d 17, the court dismissed the Ricciardis' statutory inverse condemnation claim as well.

---

[1] After the lawsuit was filed, the Town's insurer, Rural Mutual Insurance Company, moved to intervene, bifurcate, and stay the case so that any insurance coverage obligations to the Town could be resolved. The circuit court granted Rural Mutual's motion to intervene, but it held the motions to bifurcate and stay in abeyance. Rural Mutual notified this court that its interests are not affected by the issues raised on appeal and that it would not be filing a brief.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶4      We agree that the Ricciardis' claims are barred under WIS. STAT. § 88.87(2).  Under the statute, para. (2)(c), which must be read in conjunction with para. (2)(d), provides the remedies for property owners for damages manifested by flooding allegedly caused by the construction or repair of a highway.  Thus, pursuant to our holding in *Pruim v. Town of Ashford*, 168 Wis. 2d 114, 483 N.W.2d 242 (Ct. App. 1992), § 88.87 preempts claims for relief other than those stated in the statute, and the circuit court properly dismissed the Ricciardis' common law claims.

¶5      We also conclude that the Ricciardis' inverse condemnation claim was untimely.   Under WIS. STAT. § 88.87, the damage occurs when the governmental entity fails to construct or maintain a highway or railroad grade pursuant to para. (2)(a), regardless of when any resultant water accumulation is discovered.  Accordingly, the three-year statutory period within which to file a notice of claim under para. (2)(c) or within which the governmental entity must have actual notice under para. (2)(d) had already expired when the Ricciardis purchased the property.  We affirm the decision of the circuit court.

## BACKGROUND

¶6      No pertinent facts are in dispute.  This lawsuit arises out of road maintenance or resurfacing of Ash Street, a public road located in the Town of Lake, Price County.  The Ricciardis alleged that the Town "negligently, carelessly, and with lack of due care" both "raised the height of the roadway … in excess of that permitted by law" and "installed culverts in such a manner … that causes such culverts to direct large quantities of water, debris, and other runoff onto [the Ricciardis'] residential and business property."  The Ricciardis did not assert in their complaint when the Town's alleged negligent maintenance/installation occurred.  The evidence submitted on summary judgment, however, established that Ash

Street was last resurfaced by the Lymantown Sanitary District in 1990. The evidence also established that the Town last installed a culvert on Ash Street on July 13, 2011.

¶7 It is undisputed that the Ricciardis purchased their real property—on which they reside and operate a mobile home park business—adjacent to Ash Street on June 1, 2015. Carl averred by affidavit that he observed flooding on his property in "the Autumn of 2015." According to Carl,

> water was pouring from a culvert under … Ash Street adjacent to his property, pooling on the surface of his property, and saturating the soil of the property to such an extent that the water was emanating up from the soil, forming ponds, and damaging and threatening buildings, mobile homes, and other structures on the property.

He stated that the flooding had occurred in 2015, 2016, 2017, and 2018. Carl claimed to have "personally inspected the said culvert and found that it is situated so that its mouth, opening onto the [Ricciardis'] property, is at an elevation that directs the water flowing through it onto" the property. He did not allege that any recent work by the Town had caused the flooding issues with the culvert.

¶8 By the same affidavit, Carl asserted that he complained to the Town in 2015 and repeatedly in 2016 and 2017 about the culvert. He claimed that he told the Town that the culvert "was wrongfully placed" and demanded that the Town relocate or reconstruct the culvert. Carl presented evidence of his appearance at several Town board meetings where the Ash Street culvert was discussed, in addition to other culverts where flooding was an issue. He also presented evidence that Town officials came to his property in the summer of 2017 to discuss the culvert. Carl stated that he hired a contractor in October 2017 to spread dirt and gravel on his property to—unsuccessfully, as it turned out—address the flooding.

He claimed that the Town was aware of this activity because the contractor required a permit from the Town to travel on the roads.

¶9     There is no evidence in the record that the prior owners of the Ricciardis' property—between 1990 and 2015—ever expressed concerns or complaints regarding flooding caused by the resurfacing of Ash Street in 1990 or the installation of the culvert in 2011.  The Town also alleged, by affidavit, that it had no knowledge of any alleged problems or flooding during the 1990 to 2015 time period.

¶10     On March 5, 2018, the Ricciardis served the Town a written notice of circumstances under WIS. STAT. § 893.80(1d)(a), and they later served a notice of claim on or about October 29, 2018, under § 893.80(1d)(b).[3]  The Town disallowed the § 893.80 notice of claim on March 14, 2019.  The Ricciardis did not, however, provide the Town with any form of "sworn statement" under WIS. STAT. § 88.87(2)(c) that alleged faulty maintenance of Ash Street or that construction of the culvert resulted in flooding.

¶11     The Ricciardis subsequently filed this lawsuit against the Town on September 12, 2019.  The complaint alleged common law damage claims for negligence and maintenance of a private nuisance as well as an inverse condemnation claim under WIS. STAT. ch. 32.[4]  The Ricciardis further asserted their

---

[3] The notice requirements under WIS. STAT. § 893.80(1d) require both "notice of injury" and "notice of claim" when an action is brought against certain governmental bodies.  *See Yacht Club at Sister Bay Condo. Ass'n v. Village of Sister Bay*, 2019 WI 4, ¶20, 385 Wis. 2d 158, 922 N.W.2d 95.

[4] "Inverse condemnation is a procedure by which a property owner petitions the circuit court to institute condemnation proceedings.  It 'allows a property owner to institute condemnation proceedings against anyone who possesses, but fails to exercise, the power of condemnation.'" *Maple Grove Country Club Inc. v. Maple Grove Ests. Sanitary Dist.*, 2019 WI 43, ¶13 n.9, 386 Wis. 2d 425, 926 N.W.2d 184 (citations omitted); WIS. STAT. § 32.10.

compliance with the notice requirements in WIS. STAT. § 893.80(1d)(a)-(b). The complaint did not, however, mention a claim under WIS. STAT. § 88.87, nor did it allege that the Ricciardis complied with the notice requirements of § 88.87(2)(c) or (2)(d). As relevant here, in its answer, the Town raised § 88.87 as an affirmative defense, asserting both that the Ricciardis' causes of action were barred and that they failed to comply with the applicable notice requirements.

¶12     The Town moved for summary judgment, seeking dismissal of the Ricciardis' lawsuit. It argued that most of the Ricciardis' claims were preempted by WIS. STAT. § 88.87. As to the inverse condemnation claim, the Town alleged that the Ricciardis failed to timely comply with the specific notice and claim provisions in § 88.87(2)(c) and (2)(d). The Ricciardis opposed the motion, arguing that because the Town had actual notice of their flooding claims under para. (2)(d), para. (2)(c) was inapplicable and neither the three-year notice requirement nor the statutory preemption of all common law claims barred their causes of action.

¶13     The circuit court issued a written decision granting the Town's motion for summary judgment and dismissing the case with prejudice.[5]  First, the court observed that WIS. STAT. § 88.87 "provides the exclusive remedy when a landowner wants to sue a Town for flooding or water-soaking problems resulting from road construction or road maintenance. Common law claims are preempted." *See Pruim*, 168 Wis. 2d at 122. In response to the Ricciardis' argument that para. (2)(d) is a savings clause and must be read separately from para. (2)(c), the court called this a "tortured and incorrect reading" that would "allow a plaintiff to sue for whatever that plaintiff wanted to pursue" and "would not leave the statute as the

---

[5]  While the Town's motion for summary judgment was pending, our supreme court issued its decision in *Southport Commons, LLC v. DOT*, 2021 WI 52, 397 Wis. 2d 362, 960 N.W.2d 17. The parties then filed supplemental briefs addressing the court's decision in that case.

exclusive remedy." According to the court, these paragraphs "must be read together and in sequence," as is demonstrated by the fact that the references in para. (2)(d) "flow[]" from para. (2)(c). Accordingly, the court concluded that even under para. (2)(d), all claims except inverse condemnation are preempted.

¶14 Second, as to the inverse condemnation claim, the circuit court concluded that the Ricciardis had failed to establish that notice—under either WIS. STAT. § 88.87(2)(c) (sworn statement) or (2)(d) (actual notice)—was timely provided to the Town in order for the claim to proceed. According to the court, under either paragraph, the Ricciardis needed to act within three years after the damage occurred, which would have been either in 1990 when the road was resurfaced or in 2011 when the culvert was installed. The court relied on our supreme court's recent decision in *Southport Commons* to reach this conclusion. Given that the Ricciardis did not own the property within three years of either of those events, they did not and could not comply with § 88.87, and their claim for inverse condemnation was barred. The Ricciardis appeal.

## DISCUSSION

¶15 On appeal, the Ricciardis challenge the circuit court's grant of summary judgment to the Town based upon its interpretation of WIS. STAT. § 88.87. The interpretation of a statute presents a question of law that we review independently. *See State v. Grandberry*, 2018 WI 29, ¶11, 380 Wis. 2d 541, 910 N.W.2d 214. Our review of a circuit court's summary judgment decision is also de novo, and we apply the same methodology as the circuit court. *Springer v. Nohl Elec. Prods. Corp.*, 2018 WI 48, ¶9, 381 Wis. 2d 438, 912 N.W.2d 1. That methodology provides that summary judgment is appropriate "if the pleadings,

7

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

## I. WISCONSIN STAT. § 88.87

¶16 The purpose behind WIS. STAT. § 88.87 is "to regulate the construction and drainage of all highways in order to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters due to the construction of highways or railroad beds." *Southport Commons*, 397 Wis. 2d 362, ¶21 (quoting *Lins v. Blau*, 220 Wis. 2d 855, 859, 584 N.W.2d 183 (Ct. App. 1998)).

> The statute imposes a duty on governmental entities to refrain from impeding "the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands."

*Lins*, 220 Wis. 2d at 859 (quoting § 88.87(2)(a)).

¶17 Accordingly, WIS. STAT. § 88.87(2)(c) "creates a remedy for property owners who claim damages from a violation of" § 88.87(2)(a) and "also establishes certain procedures to be followed in making a claim." *Southport Commons*, 397 Wis. 2d 362, ¶22. Paragraph (2)(c) provides, in pertinent part, that "any property owner damaged by the highway [construction or maintenance] may, within 3 years after the alleged damage occurred, file a claim with the appropriate governmental agency or railroad company," which "shall consist of a sworn statement of the alleged faulty construction and a description, sufficient to determine the location of

8

the lands, of the lands alleged to have been damaged by flooding or water-soaking." Sec. 88.87(2)(c). The governmental agency or railroad company is then given ninety days to "correct the cause of the water damage, acquire rights to use the land for drainage or overflow purposes, or deny the claim." *Id.*

> If the agency or company denies the claim or fails to take any action within 90 days after the filing of the claim, the property owner may bring an action in inverse condemnation under [WIS. STAT.] ch. 32 or sue for such other relief, other than damages, as may be just and equitable.

Sec. 88.87(2)(c).

¶18    The legislature also created WIS. STAT. § 88.87(2)(d), which provides:

> Failure to give the requisite notice by filing a claim under par. (c) does not bar action on the claim if the city, village, town, county, railroad company or department of transportation had actual notice of the claim within 3 years after the alleged damage occurred and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant city, village, town, county, railroad company or department of transportation.

## II. The Ricciardis' Common Law Causes of Action Are Preempted by WIS. STAT. § 88.87.

¶19    The Ricciardis first argue that none of their claims or causes of action are preempted or barred by WIS. STAT. § 88.87. They claim that § 88.87(2)(c) and (2)(d) are two entirely separate provisions such that any restrictions within para. (2)(c) do not apply to para. (2)(d). According to the Ricciardis, the language in para. (2)(c) stating that "the property owner 'may bring an action in inverse condemnation … or sue for such other relief, other than damages, as may be just and equitable'" applies only "*if* the governmental body denies the written notice of claim described in the preceding sentences of that subsection or that claim is deemed denied by its inaction." In other words, the Ricciardis assert that "[t]he 'other than

9

damages' language is part and parcel with … [§] 88.87(2)(c)" and does not apply "[i]f no such claim is filed" because the governmental body had actual notice under § 88.87(2)(d).

¶20    The Town argues that the issue of statutory preemption under WIS. STAT. § 88.87 was previously resolved in *Pruim*. There, a property owner brought a nuisance action, claiming that a town had negligently constructed and maintained a highway, which resulted in flooding on his property after a rainstorm. *Pruim*, 168 Wis. 2d at 117, 119-20. The property owner argued that § 88.87 (1991-92), "was not meant to preempt his common law claims"; instead, he claimed that the statute is a "mere additional remedy, statutorily provided by the legislature, to act as an adjunct to common[-]law remedies like the nuisance action." *Pruim*, 168 Wis. 2d at 120. We disagreed, holding "that the legislature decided to regulate and control strictly the types of claims that may be made by property owners against governmental entities regarding highway construction and repair" and that § 88.87 (1991-92), "preempts claims for relief other than those stated in the statute." *Pruim*, 168 Wis. 2d at 117, 122.

¶21    We agree with the Town that pursuant to WIS. STAT. § 88.87 and *Pruim*, the only claims that are permitted under the statute—provided the property owner complies with the notice requirements under § 88.87(2)(c)—are those for inverse condemnation under WIS. STAT. ch. 32 and equitable claims for relief "other than damages." *See* § 88.87(2)(c); *Pruim*, 168 Wis. 2d at 117, 119, 122. We are bound by our decision in *Pruim*. *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) ("[T]he court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals.").

¶22 We acknowledge, however, that at the time ***Pruim*** was decided, WIS. STAT. § 88.87(2)(d) did not exist. *See* § 88.87 (1991-92). The legislature amended § 88.87 to include para. (2)(d) in 1993. *See* 1993 Wis. Act 456, § 110; ***Lins***, 220 Wis. 2d at 860. Accordingly, the Ricciardis argue that ***Pruim*** is inapplicable because the statutory preemption provision of § 88.87(2)(c) "applies, by its express terms, 'if' a claim meeting the requirements of that [paragraph] is filed and denied or deemed denied." They assert that where there is no claim filed but the governmental entity had actual notice of the claim pursuant to § 88.87(2)(d), there is no preemption because para. (2)(d) "does not contain the 'other than damages' language that appears in" para. (2)(c). Without that language, the Ricciardis assert that there is no limitation on the types of remedies a property owner can seek against a governmental entity when that entity has actual knowledge of a claim.

¶23 We conclude that the Ricciardis' reading of the statute is contrary to the rules of statutory interpretation. As has been stated many times, "statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." ***Id.*** Importantly, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." ***Id.***, ¶46.

¶24 The Ricciardis improperly read the paragraphs of WIS. STAT. § 88.87 in isolation while ignoring the context of each provision. Paragraphs 88.87(2)(c) and (2)(d) must be read together as two provisions describing the remedy for

11

property owners who claim property damage from a violation of the statute. We agree with the circuit court's rationale that the "language of [para. (2)(c)] flows into [para. (2)(d)]." Read alone, without the context of para. (2)(c), para. (2)(d) is ambiguous. *See Kalal*, 271 Wis. 2d 633, ¶46. Paragraph (2)(d) refers to "the delay or failure to give the requisite notice" and "action on the claim," which are meaningless phrases without the explanations contained in para. (2)(c).

¶25 Further, WIS. STAT. § 88.87(2)(d) contains no discussion of a remedy. That is because para. (2)(d) merely confirms that the remedies listed in para. (2)(c) are still available even if the property owner failed to strictly comply with the requirements of para. (2)(c), provided that the governmental entity had actual notice of the claim and the owner can prove no prejudice. Sec. 88.87(2)(c), (2)(d). Further, as we observed in *Van v. Town of Manitowoc Rapids*, 150 Wis. 2d 929, 442 N.W.2d 557 (Ct. App. 1989):

> [WISCONSIN STAT. § 88.87 (1987-88)] created a new right in derogation of the common law. (At common law, a government has no duty to property owners for water damage occasioned by road construction or repair.) It is a cardinal rule that where a new right has been given by statute and a specific remedy provided by statute, the right can be vindicated in no other way than that prescribed by statute. Such statutes are to be construed narrowly and strictly.

*Van*, 150 Wis. 2d at 934 (citations omitted).

¶26 Contrary to the Ricciardis' assertion, we are not reading words into the statute that the legislature did not see fit to include "by grafting the 'other than damages' language into [WIS. STAT.] § 88.87(2)(d)." *See, e.g.*, *Fond Du Lac County v. Town of Rosendale*, 149 Wis. 2d 326, 334, 440 N.W.2d 818 (Ct. App. 1989) ("One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning."). Instead, we see the Ricciardis'

reading of the statute as a violation of this particular canon of statutory construction. The Ricciardis are adding the availability of other remedies to para. (2)(d) that the legislature did not include. Had the legislature intended a different result as to the available remedies between paras. (2)(c) and (2)(d)—such that, for example, all common law claims would be available to property owners—the legislature would have specifically provided for that result.

¶27 Additionally, the Ricciardis' interpretation leads to an absurd and unreasonable result. *See* **Kalal**, 271 Wis. 2d 633, ¶46. WISCONSIN STAT. § 88.87 was designed by the legislature "to regulate the construction and drainage of all highways in order to protect property owners from damage to lands caused by unreasonable diversion or retention of surface waters due to the construction of highways or railroad beds." **Lins**, 220 Wis. 2d at 859. As we explained in **Pruim**, "the legislature has commanded that it will 'control and regulate' the protection of property owners" by describing "exactly how property owners could act to protect themselves." **Pruim**, 168 Wis. 2d at 118-19.

¶28 Thus, it is not reasonable to read the statute as the Ricciardis suggest. Under the Ricciardis' interpretation, if a property owner strictly complies with the express terms of WIS. STAT. § 88.87(2)(c) and files a notice of claim, the property owner's recovery is limited to claims under inverse condemnation and in equity, but if the property owner does not comply with para. (2)(c), then he or she is entitled to bring claims for the full panoply of causes of action and damages resulting from the government's violation of the statute as manifested by the flooding. This reading of the statute could incentivize property owners to avoid filing notices of claims to comply with the statute: why would a property owner ever attempt to comply with the requirements in para. (2)(c) if doing so would limit the remedies he or she could pursue against the governmental entity?

¶29    In summary, we conclude that the proper reading of WIS. STAT. § 88.87 is the one advanced by our holding in *Pruim*.  Under either § 88.87(2)(c) or (2)(d), "the statute preempts claims for relief other than those stated in the statute," *see Pruim*, 168 Wis. 2d at 117; *Kohlbeck v. Reliance Constr. Co.*, 2002 WI App 142, ¶7, 256 Wis. 2d 235, 647 N.W.2d 277, and "the property owner may bring an action [only] in inverse condemnation under [WIS. STAT.] ch. 32 or sue for such other relief, other than damages, as may be just and equitable," *see* § 88.87(2)(c).  The circuit court properly dismissed the Ricciardis' common law claims on summary judgment.

*III. Any Notice the Ricciardis Provided to the Town Was Untimely Under WIS. STAT. § 88.87(2), and thus the Inverse Condemnation Claim Is Barred.*

¶30    As noted, the circuit court, relying on our supreme court's decision in *Southport Commons*, concluded that the Ricciardis' inverse condemnation claim was barred by their failure to show that they provided timely notice to the Town under WIS. STAT. § 88.87(2).  The Ricciardis argue that the circuit court erred because § 88.87(2)(c) provides that the clock begins running "after the alleged damage occurred," not when the defective construction by the Town occurred.  According to the Ricciardis, "[t]he record here demonstrates that the damage occurred sometime after the Ricciardis' May of 2015 purchase of the property." (Formatting altered.)  Regardless, the Ricciardis also assert that the time limits of para. (2)(c) are "inapplicable because it is supplanted, in this case, by the 'actual notice' subsection, § 88.87(2)(d)."  We disagree with the Ricciardis' characterization of when the damage occurred under the statute.  We also determine that § 88.87(2)(d) does not apply under the facts of this case.  We therefore conclude that pursuant to *Southport Commons*, the Ricciardis' inverse condemnation claim is time barred.

14

¶31     As to the first issue, when the damage occurred under the statute, we note that in *Southport Commons*, a property owner—Southport Commons LLC—alleged that property it owned in Kenosha County was damaged by the Wisconsin Department of Transportation (DOT) relocating a frontage road, resulting in a bisection of the property. *Southport Commons*, 397 Wis. 2d 362, ¶¶8-9. Southport filed a notice of claim under WIS. STAT. § 88.87(2)(c) against the DOT, and it later sued the DOT for inverse condemnation, alleging that the DOT's faulty construction and maintenance of the frontage road impeded the flow of water, thereby creating new wetlands or increased wetlands on its property. *Southport Commons*, 397 Wis. 2d 362, ¶¶13-14. The DOT moved for judgment on the pleadings, arguing that Southport failed to timely file its notice of claim; Southport responded that notice need only be filed within three years of *discovery* of the damage to be timely. *Id.*, ¶15. The circuit court granted the DOT's motion and dismissed the lawsuit, agreeing that the notice of claim was not timely filed. *Id.*, ¶16. We affirmed, and our supreme court later affirmed our decision. *Id.*, ¶¶6, 17.

¶32     The relevant question before our supreme court was at what time the notice of claim period in WIS. STAT. § 88.87(2)(c) begins to run. According to the court, "'occurred' in the context of [§] 88.87(2)(c) does not mean 'discovered.' The notice of claim period in § 88.87(2)(c) begins to run when the damage happens or takes place." *Southport Commons*, 397 Wis. 2d 362, ¶¶4, 40. In reaching that conclusion, the court noted the distinction between WIS. STAT. § 893.55(1m)—which references when "the injury was discovered"—and § 88.87(2)(c)—which does not contain any reference to "discovery"—concluding that "the legislature chose not to include a discovery provision in § 88.87(2)(c), and it would be error to read one in." *Southport Commons*, 397 Wis. 2d 362, ¶32.

¶33    The supreme court further referenced legislative history related to the amendment to WIS. STAT. § 88.87(2)(c)—changing the former ninety-day time limit to the current three-year period for filing—stating that "[t]he legislature made this change with the intent to provide the landowner with 'sufficient time to discover the damage.'" *Southport Commons*, 397 Wis. 2d 362, ¶34 (alteration in original) (quoting *Lins*, 220 Wis. 2d at 861; Legislative Council Special Committee Note, 1993 Wis. Act 456, § 109).  The court agreed with the DOT that "'[t]his change would have been unnecessary if the notification period does not begin until the damage is discovered.'  The legislature thus did not intend an open-ended claim period such as that for which Southport advocates." *Id.*

¶34    Given our supreme court's conclusion, it seems reasonable that *Southport Commons* would control the issue in this case concerning whether the Ricciardis timely filed their lawsuit.  The Ricciardis argue, however, that *Southport Commons* does not address, or even mention, WIS. STAT. § 88.87(2)(d).  Further, they claim that rather than being a dispute over the difference between "occurred" and "discovered," "[t]he real heart of this appeal is the proper interpretation of the word 'damage' in § 88.87 …, requiring that notice be given to the Town 'within 3 years after the alleged damage occurred.'"  The Ricciardis' position is that the damage occurred whenever the flooding occurred.  We conclude that the Ricciardis' interpretation is a strained attempt to argue around the holding in *Southport Commons*.

¶35    We begin with the dictionary definition of "damage." *See Kalal*, 271 Wis. 2d 633, ¶45; *State v. Sample*, 215 Wis. 2d 487, 499, 573 N.W.2d 187 (1998) ("For purposes of statutory interpretation or construction, the common and approved usage of words may be established by consulting dictionary definitions.").  "Damage," as a noun, is defined as "[l]oss or injury to person or property." *Damage*,

BLACK'S LAW DICTIONARY (11th ed. 2019). Then, under WIS. STAT. § 88.87(2)(c) and (2)(d), the time limitation is calculated based on when "damage occurred." Our supreme court stated that "something 'occurs' when it happens or takes place." *Southport Commons*, 397 Wis. 2d 362, ¶29. Taken alone, those definitions could support the Ricciardis' reading of the statute; however, we must consider the phrase "damage occurred" in the context in which it is used. *See Kalal*, 271 Wis. 2d 633, ¶46.

¶36 That context can be found in WIS. STAT. § 88.87(2)(a). Under § 88.87(2)(c), the governmental entity must "construct[] and maintain[] a highway or railroad grade" in accordance with the statutory provisions under para. (2)(a). Section 88.87(2)(a) provides that whenever a governmental entity

> has heretofore constructed and now maintains or hereafter constructs and maintains any highway or railroad grade in or across any marsh, lowland, natural depression, natural watercourse, natural or man-made channel or drainage course, it shall not impede the general flow of surface water or stream water in any unreasonable manner so as to cause either an unnecessary accumulation of waters flooding or water-soaking uplands or an unreasonable accumulation and discharge of surface waters flooding or water-soaking lowlands.

When a governmental entity "impede[s] the general flow of surface water or stream water in any unreasonable manner" causing water to accumulate on a property, the property owner is "damaged by the highway or railroad grade" and must bring a claim under § 88.87. Sec. 88.87(2)(a), (c).

¶37 Therefore, the loss or injury to property happens or takes place—in other words, the damage occurs—when the governmental entity fails to construct or maintain a highway or railroad grade pursuant to WIS. STAT. § 88.87(2)(a). When surface water accumulates or flooding occurs, an affected property owner may make

17

a claim against the governmental entity pursuant to § 88.87(2)(c) or (d), provided the claim is made "within 3 years after the alleged damage occurred." Sec. 88.87(2)(c), (d). Regardless of when the water accumulation is discovered, the damage occurred when the governmental entity failed to act properly pursuant to § 88.87(2)(a). As the circuit court reasoned, "in the context of § 88.87, … the word 'damage' is not talking about actual damage to someone's property, it is talking about alleged faulty construction for which the remedies are narrow and specified and DO NOT include fixing any actual damage to property or paying money damages."

¶38     In other words, the damage that has occurred due to the governmental entity's failure to construct or maintain a highway or railroad grade pursuant to WIS. STAT. § 88.87(2)(a) manifests itself when there is surface water accumulation, and any claim by an affected property owner must be brought under § 88.87. If flooding does not occur or does not occur within three years of the governmental entity's faulty maintenance or construction—i.e., when the damage occurred—the claim is barred.

¶39     The Ricciardis argue that, under this reading, "every owner of property abutting a road would be required to file a claim immediately after the work was concluded, and even if the property had not been damaged, on the chance that damage might later 'happen' or 'take place.'" However, our supreme court addressed this concern in *Southport Commons* when it observed that the legislature amended the statute. *Southport Commons*, 397 Wis. 2d 362, ¶34. The possibility of later discovery of the damage—as occurred in this case—was acknowledged by the legislature when it amended the statute to change the former ninety-day time limit to three years to provide "sufficient time to discover the damage." *See Lins*, 220 Wis. 2d at 861; Legislative Council Special Committee Note, 1993 Wis. Act

18

456, § 109. Under the Ricciardis' reading of the statute, a property owner would be able to extend a claim under WIS. STAT. § 88.87 indefinitely. Absent the three-year time limit, there would potentially be no limit to the governmental entity's liability for the failure to properly construct or maintain the roadway. The legislature deemed three years to be sufficient. Any other conclusion would render the notice of claims period entirely open-ended.

¶40 We view the Ricciardis' argument that the "damage occurred" whenever the "flooding occurred" as simply a rephrasing of Southport's argument before our supreme court, and it is not supported by *Southport Commons*' holding that occurred does not mean discovered. *See Southport Commons*, 397 Wis. 2d 362, ¶¶4, 40. The Ricciardis merely discovered the damage when their property flooded, but that is not when the damage occurred under WIS. STAT. § 88.87(2). The flooding was the result: the manifestation of the damage caused by the Town's failure to property construct the roadway years earlier.

¶41 Finally, the Ricciardis assert that *Pruim* "stands on the Ricciardis' side on the issue of the triggering event for the statutory 3-year period." According to the Ricciardis, this court "concluded that such a claim 'must be made within ninety days after *the damage occurred and is discovered*.'" *See Pruim*, 168 Wis. 2d at 119 (emphasis added). In reaching that conclusion, the court cited language from the Legislative Council Committee's comment on the statute that the landowner is required to commence an action under the statute for equitable relief or inverse condemnation "for the taking of the land by flooding or water-soaking." *Id.* at 121 (formatting altered). The Ricciardis assert that "[t]here could be no such claim for 'flooding or water-soaking' until the 'flooding or water-soaking' happened."

19

¶42   We disagree with the Ricciardis' assertion that ***Pruim*** resolves the issue of the triggering event in their favor.  As the ***Southport Commons*** court observed, "the ***Pruim*** court seemingly used the words 'occurred' and 'discovered' interchangeably."  ***Southport Commons***, 397 Wis. 2d 362, ¶36.  The court explained, however, that "the landowner in ***Pruim*** discovered the damage in the immediate aftermath of its occurrence"; therefore, "the court's use of the phrase 'occurred and is discovered,' along with its use of the two terms interchangeably, makes sense." ***Southport Commons***, 397 Wis. 2d 362, ¶39.  Further, and as relevant to this appeal as well, our supreme court noted that "the ***Pruim*** court did not address the question raised in the instant case, i.e., when the notice of claim period begins when discovery happens long after the damage occurs.  ***Pruim*** is distinguishable on its facts, and thus it does not control the outcome here." *See **Southport Commons***, 397 Wis. 2d 362, ¶39.

¶43   In this case, the Ricciardis allege in their complaint that the Town conducted faulty maintenance of Ash Street and faulty installation of the culvert, which occurred in 1990 and in 2011, respectively.  The circuit court found that "nothing material is alleged to have happened, at the hands of anyone, between [the] culvert installation in 2011 and the [Ricciardis'] subsequent purchase."  As the Town asserts, and the Ricciardis do not dispute, there is no evidence demonstrating that there was any difference in the property before and after the culvert was installed or that anything of substance regarding the culvert happened in the four years after its installation.  Further, evidence in the record states that the prior owners of the Ricciardis' property did not raise concerns or complaints regarding flooding and that the Town did not have any knowledge of any alleged problem or flooding during that period.

¶44 These facts are fatal to the Ricciardis' case. Absent any evidence that some other action by the Town violated the provisions of WIS. STAT. § 88.87(2)(a), we must conclude that installing the culvert is the event that activated the protections of the statute. Without that conclusion, there is no causation linking the Town to the flooding and providing the Ricciardis a remedy under the statute. Therefore, the damage in this case that impacted the function of the culvert/road for removing or directing water occurred, at the latest, when the culvert was installed. Accordingly, this was the event that triggered the three-year statutory notice deadline for the Ricciardis to bring their claim.

¶45 The Ricciardis, therefore, failed to comply with the requirements of WIS. STAT. § 88.87(2) because the three-year statutory period had already run by the time they purchased the property.[6] The circuit court properly granted summary judgment to the Town and dismissed the Ricciardis' inverse condemnation cause of action as untimely.

*By the Court.*—Judgment affirmed.

---

[6] As we determined above, WIS. STAT. § 88.87(2)(c) and (2)(d) are to be read together; thus, the provisions addressing whether the Ricciardis' lawsuit was timely apply equally under both paragraphs. While the Ricciardis argue that they "were diligent in notifying the Town and asserting their claims for relief," based on our statutory analysis above, they failed to do so within the three-year time limit. Even if we assume, without deciding, that the Town had actual notice of the claim under § 88.87(2)(d), the earliest the Town had actual notice would have been 2015, given that there was no evidence that the prior owners complained of flooding. That notice came too late. Because the Town did not have actual notice within three years after the alleged damage occurred, we need not reach the issue of whether the Ricciardis have shown that "the delay or failure to give the requisite notice has not been prejudicial to the [Town]." *See* § 88.87(2)(d); *see also* ***Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (observing that an appellate court need not address every issue raised by the parties when one issue is dispositive).